JUDY v. THE FARMERS & TRADERS' BANK, *Appellant.*

1.  **Bank Deposit**: TRUST. A bank which receives a deposit under an agreement to apply it to the payment of a debt due a designated person, cannot divest it from the purposes of the trust by paying it to a different one.

2.  **Equity**: FINDING OF FACTS BY LOWER COURT, WHEN SUPREME COURT WILL NOT DISTURB IT. In an equity case where the trial court has the witnesses personally before it, and there is abundant evidence to sustain its finding of facts, the Supreme Court will not interfere and reverse such finding, unless it is clear it should have been otherwise.

*Appeal from Audrain Circuit Court.*—Hon. ELIJAH ROBINSON, Judge.

AFFIRMED.

*Macfarlane & Trimble* for appellant.

In chancery cases this court will review the evidence upon which the finding and judgment of the trial court was made, and reverse, affirm or modify the same according to equity. *Ringo v. Richardson*, 53 Mo. 385; *Moore v. Wingate*, 53 Mo. 398; *Freeman v. Wilkerson*, 50 Mo. 554.

The evidence fails to show that any trust was ever created, or that the bank ever agreed to accept the money and pay the Dyson note. An express trust can only be created by an express agreement between the parties. They are created by the direct or express words of grantor or settler. 1 Perry on Trusts, § 73; *Foster v. Fried*, 37 Mo. 43. Judy, Cassidy and Dyson all deny making any agreement with the bank about this money. Judy says he had nothing to do with it. He supposed " the arrangements were between the bank and Cassidy." Cassidy says, " I gave no directions at all about it." Dyson knew nothing about it. There could then have been no express agreement between the bank and the party who delivered the money to the bank. In fact, it does not appear who did have or exercise any right to control the money before, or at the time, it was deposited. A trust cannot be implied from the evidence in this case. A trust, it is true, may be implied from the acts and declaration of the person in possession of the property, and by his dealings with it. Yet loose, vague and indefinite expressions are insufficient to create the trust. It must be clear that the bank assumed the duties and liabilities. 1 Perry on Trusts, § 86, and authorities cited; *Underwood v. Underwood*, 48 Mo. 528; Story's Eq., § 764; Willard's Eq., 76; *Childs v. W. C. Association*, 4 Mo. App. 74; *Day v. Rath*, 18 N. Y. 458. The money at the time it was received was deposited to the credit of Clark. The legal title never rested in the bank, which was necessary in order to make it a trustee. *Foster v. Fried*, 37 Mo. 43; 1 Perry on Trusts, § 73. The acts of the bank and the dealings with the funds, not only fail to show any recognition of the trust on its part, but show in the very strongest terms the contrary. The evidence shows not only that the bank was not made the trustee by the parties, but that Clark was, either by Cassidy, Judy or each other. The conclusion is irresistible from the evidence, that the money was deposited to Clark's credit by authority of both Judy

and Cassidy, and·if not, by their subsequent acts they ratified the action of the bank in so doing.

*M. Y. Duncan* for respondent.

The bank received the $2,500 in trust to pay off the Dyson debt. The deposit ticket, as well as every other circumstance in evidence, goes to prove this. A valid trust can be created by parol declarations. Hill on Trustees, (3 Am. Ed.) side pp. 59, 60. The case of *Ringo v. Richardson,* 53 Mo. 385, has no application to a trust in relation to personalty created by parol. The bank took Judy's draft, collected his money, took credit for it, and without his authority, put it to the credit of Clark, and then, after being fully advised of the matter, refused to correct the mistake, and it should now be required to pay the money.

*D. H. McIntyre* and *F. M. Brown* also for respondent.

A trust was created in this case, and being by the direct and express words of the grantor and the head and representative of the trustee, the appellant, and for the benefit of another, it was express or direct. Perry on Trusts, (3 Ed.) § 73; *State ex rel. v. Gambs,* 68 Mo. 289. A trust can be established as to personal property by parol. Perry on Trusts, § 86. But it is a matter of little consequence whether the trust is direct or implied, or was constructive. If there was a trust, then there was obligation on the bank, arising out of a confidence reposed in it, to apply the money left with it according to such confidence, and if the court is satisfied of this, it will not withhold the relief prayed for. Equity will give relief in such cases. Story's Eq. Jur., (12 Ed.) § 29. Any declaration, however informal, evincing the intention with sufficient clearness, will have the effect to establish the trust, and, besides, the bank got the legal possession, and there was a valuable consideration underlying the trust. *Day v. Roth,* 18 N. Y. 448, 453. Again, if the trust was not perfectly created, a court of

equity can enforce it as a contract, if there is a valuable consideration; wherever there is a valuable consideration, the contract will be executed as near to the intention of the parties as possible. "In such cases effect is given to the consideration to carry out the intentions of the parties, though informally expressed." The deposit ticket shows, beyond question, that a trust was created to pay off the Dyson debt. The deposit ticket and other facts in evidence corroborate the testimony of Judy, that the bank was to pay off the Dyson debt.

*S. M. Edwards* for Cassidy.

Cassidy has the right to enforce the collection of the Dyson note now owned by him out of the Judy land. He thought the land was free from all liens, and was so led to believe by both Judy and the bank. The bank got the $2,500 for the purpose of paying the Dyson note. "When one accepts a trust or confidence reposed in him by another, he will be converted into a trustee for the use of that person." *Foote v. Foote*, 58 Bar. 258; *Foster v. Fried*, 37 Mo. 37.

HENRY, J.—Plaintiff filed his petition in the Audrain circuit court, alleging that, on the 14th of October, 1872, the plaintiff borrowed of one Dyson $2,000 for three years, and executed his note of that date, payable three years after, with ten per cent interest per annum compounded annually, and a deed of trust conveying about 1,000 acres of land, as security therefor. About the 1st of January, 1875, he applied to Cassidy to borrow for a term of years $5,000, and proposed to secure it by a deed of trust on the same land, to which Cassidy assented, on the condition that out of the money so borrowed, plaintiff should cause the Dyson note to be paid, and procure a release of the deed of trust, given to secure it.

Thereupon, plaintiff executed a note for $5,000 to Cassidy, payable in five years, and a deed of trust, conveying

said land to secure it, which were delivered to Cassidy, who then authorized plaintiff to draw on him for the money through some bank "upon the express condition that said bank should hold $2,500 of the amount, and place it to Dyson's credit, and hold it for the use of Dyson to pay off his said note." That plaintiff went to defendant bank which took the draft, agreeing to collect it, and pay to plaintiff $2,500, and place the balance to Dyson's credit, and pay it to him, and take his release of said deed of trust, and to notify Dyson when the money should be received. That said bank collected the money but had never paid said Dyson's note, and that said note and deed of trust became due, and Dyson when this suit was commenced, was about to proceed to sell said land, and prays that the defendant bank be compelled to pay off and discharge said Dyson note, and procure a release of said deed of trust, and for general relief.

The answer of the bank, is that said sum of $2,500 was received on the 4th of January, 1875, as deposit money, and placed to the credit of John P. Clark. That plaintiff afterward, while said money was still in bank to Clark's credit, was informed of the fact, and, also, that Clark could draw it out, and he made no objection thereto. That it remained in the bank to Clark's credit for six months, without any objection from plaintiff. That afterward it was paid to, and used by Clark. That the bank received it as a deposit only, and, by the direction of plaintiff and Cassidy, placed it to Clark's credit.

This answer was denied by the plaintiff. The court found the issues for plaintiff, and rendered a decree in conformity with the prayer of the petition, from which the bank has appealed.

The only questions in the case are questions of fact. Did the bank receive the $2,500, under an agreement to pay off the Dyson note, or was it authorized by the plaintiff or Cassidy, to place it to the credit of John P. Clark. Except the entries in the bank book, there is not a particle of

testimony, that either Cassidy or plaintiff authorized the deposit to Clark's credit, and both plaintiff and Cassidy testified, that they did not authorize it. The bank officers, also, testified that, when informed that the money was there to the credit of Clark, plaintiff was surprised, and remarked that it "was not his understanding of the arrangement." We think it clear from the evidence, that the bank had no authority to place the money to Clark's credit.

The other question is not so easily answered, but still, we are of the opinion that the weight of evidence is against the bank. The plaintiff testified that the money was to be applied to the Dyson note. That Ringo told him that it had been placed to Dyson's credit, and that the bank would notify him that it was there for him, and would pay the same rate of interest that plaintiff was paying Dyson until the note held by Dyson should be paid off. Clark testified that Mr. Ringo, president of the bank, first informed him that the money was to his credit. This was in January, 1875, and that after Ringo's death, which occurred February 3rd, 1875, Garrard, who was acting as cashier of the bank, told him that Cassidy had instructed him to place the money to the credit of the bank. If there was no authority to make the deposit to Clark's credit, then, in order to effect the object contemplated by Cassidy and Judy the money must have been deposited, either to the credit of the bank, or to Dyson's credit. It is manifest in any view to be taken of the case, the plaintiff was not to have control of the money, and that the bank was aware of that fact, is evidenced by its placing the money to the credit of Clark. There being no authority for such a disposition of the money, the obvious duty of the bank was to place it to the credit of Dyson, or to its own credit, and, if to Dyson's credit, to notify him at once that it was there for him; or, if to its own credit to hold it until the Dyson note became due and then pay it off. The bank never notified Dyson that the money was there for him, and one significant fact, is that Mr. Clark was requested by the bank to notify Dyson. If

the deposit to Dyson's credit was authorized by Cassidy, or Judy it was no concern of the bank whether Clark notified Dyson or not.    It may be said it was done in order that the bank might stop the interest it agreed to pay until Dyson was paid, but this is a concession that the plaintiff's testimony on that subject is true.    It is unnecessary to review more minutely the testimony.    The court below found that the bank agreed to pay the Dyson note, and when, as in this instance, there is abundant evidence to sustain the finding, we are not inclined to set it aside, unless there is such a preponderance of evidence to the contrary, as makes it manifest that the court should have found otherwise. The principal witnesses were personally before the court, which was, therefore, better able than we to determine the credit to which they were respectively entitled.

That plaintiff was informed that the money was placed to Clark's credit and made no attempt to change it, does not estop him from complaining of the breach of the agreement testified to by him.    He did not assent to it, but on the contrary, complained of it to the bank, and the bank had nothing to do but to cancel that entry and deposit the money according to the agreement.    It does not appear that the bank had entered it upon a pass book held by Clark, or, in any other manner, dealt with Clark so as to enable him, to dispose of it to the prejudice of the bank. The deposit ticket reads as follows:

"For account of John P. Clark.    Pay off deed of trust on John A. Judy's land favor of Dyson, $2,500."    At the trial this ticket was in possession of the bank.    It does not appear that Clark ever had it, or a duplicate in his possession, and, if he had, he could not have transferred it to any one who could have held the money discharged of the trust. The judgment is affirmed.    All. concur.