E. P. DEAL et al., Respondents, v. MISSISSIPPI COUNTY BANK, Appellant.

St. Louis Court of Appeals, March 7, 1899.

Parol Trust: PERSONAL PROPERTY: PRIVITY OF CONTRACTS. Where a person receives money which, of right, belongs to another, the latter may maintain an action therefor as for money had and received. To maintain such an action it is not essential to show privity of contract in respect of the money or property. It is only necessary to show that the fund, in equity and good conscience, belongs to the plaintiff, and that the defendant has no right to retain it, from which facts the law will imply a promise on the part of defendant to pay the money to the plaintiff.

*Appeal from the Mississippi Circuit Court.*—HON.
HENRY C. RILEY, Judge.

AFFIRMED.

RUSSELL & DEAL for respondent.

This is a suit for money had and received, and the petition
is good.   Johnson v. Bank, 116 Mo. 558.   The respondents
had stored in the elevator two thousand and sixty-six bushels
of wheat, and not having authorized any disposition of it
were entitled to that amount, and even mixed it with other
wheat could not affect their rights.   Huff v. Henry, 57 Mo.
App. 341; Kaufmann v. Schilling, 58 Mo. 218.   Besides, the
remarks of the court are not and can not by bill of exceptions
be made a part of the record.   Paint Co. v. Shooting Co., 74
Mo. App. 661.   The appellant complains that the court re-
fused to give the declarations of law as prayed.   Upon our
theory of this case none of the refused instructions were
proper.   But the appellant had already moved the court to
make a finding upon the facts, and it is not proper for the
court to do both.   Kostuba v. Miller, 137 Mo. 173; Suddarth
v. Robertson, 118 Mo. 293; Judy v. Bank, 81 Mo. 404.   Be-
sides the judgment was for the right party, as plainly appears
from all the evidence and the case should be affirmed.   Stokes
v. Barnes, 132 Mo. 214; Jones v. Poundstone, 102 Mo. 240;
Deal v. Cooper, 94 Mo. 62; Bunton v. Adams, 65 Mo. App.
6.   This appeal upon the admitted facts was without merit,
and hence must have been for delay.   We ask that it be af-
firmed with ten per cent damages.   R. S. 1889, sec. 2305;
Schwaner v. Winn, 19 Mo. App. 534; Smith v. White, 17 Mo
App. 443; Utz v. Hoerr, 20 Mo. App. 36.

R. B. OLIVER for appellant.

The trial court erred in refusing to give and sustain the
demurrer to the plaintiff's testimony at the close of the plain-

tiff's case. Nichols v. Bank, 55 Mo. App. 81. The third instruction asked for and refused is erroneous and reversible error. Nichols v. Bank, 55 Mo. App. 81; Moore v. Railroad, 31 Mo. App. 145; Musick v. Musick, 7 Mo. 495; Glenn v. Dehnen, 54 Mo. 45; Bissig v. Britton, 59 Mo. 204.

BIGGS, J.—This is an action for money had and received. The theory of the petition is that the defendant bank received from one Crenshaw $1,860 in trust to be paid to plaintiffs in satisfaction of a debt due from Crenshaw to plaintiffs; that the defendant refused to pay the money to plaintiffs and in violation of the trust undertoook to apply the fund on an indebtedness due from Crenshaw to it. The facts as alleged are substantially these: In 1897, Crenshaw owned an elevator and flouring mill. The plaintiffs are farmers. In July, August and October they deposited for storage in Crenshaw's elevator about two thousand bushels of wheat, for which Crenshaw issued to them elevator receipts. On or about December 9, 1897, they contracted to sell to Crenshaw this wheat at ninety cents per bushel to be paid for in cash upon the surrender of the elevator receipts. On the evening of the ninth Crenshaw sold his mill and elevator to the Sehrt Milling Company. The consideration of the purchase was the assumption by the milling company of an indebtedness of $15,000 due from Crenshaw to the defendant bank. At the same time Crenshaw sold to the Sehrt Milling Company twenty-six hundred bushels of wheat in the elevator, several thousand bushels of corn, and other personal property in and about the mill, for which the milling company agreed to pay $3,763. In the wheat thus sold was included that of plaintiffs. In paying for the property the Sehrt Milling Company drew five checks in favor of Crenshaw on the defendant bank, one for $1,763, and four others of $500 each, making a total of $3,763. Crenshaw assigned and delivered these checks to the defendant's cashier, with the agreement that he (the cashier) should apply

Deal v. Bank.

the amounts of the checks to the payment of certain indebtedness of Crenshaw, including the agreed purchase price of plaintiff's wheat. The debts so specified aggregated about the amounts of the checks. On the next day, to wit, December 10, Crenshaw delivered his check to plaintiffs on the defendant bank for $1,860 and thereupon they surrendered their elevator receipts to him. The defendant paid the other debts, refused to pay the check held by plaintiffs, and afterwards, on December 11, it attempted to apply the remainder of the trust fund, to wit, two thousand dollars, on a debt due from Crenshaw to it, thereupon plaintiffs brought this suit, in which they claimed that by reason of the aforesaid facts the defendant had in his possession $1,860 which in equity and good conscience it ought to pay to them. The answer of the defendant is in effect a general denial. The cause was submitted to the circuit court without a jury. At the conclusion of the evidence, the court, at the request of the defendant, made the following findings of fact and rendered a judgment thereon for the plaintiffs, to wit "The court finds that about December 1, 1897, the plaintiffs contracted to sell for cash on delivery their wheat amounting in value of $1,860.30 to Crenshaw & Co., and that before delivering to them the said wheat was by Crenshaw & Co. sold to Jacob Sehrt and that Jacob Sehrt on December 9th, 1897, paid the said Crenshaw & Co. for said wheat in checks amounting to about $3,763, and covering some other property, which checks were turned over by Crenshaw & Co. to E. G. Rolwing, cashier of defendant bank with notice that it was in part the proceeds of plaintiff's wheat and directed said cashier of defendant bank to pay plaintiffs for their wheat out of said money and that the said cashier agreed to do so by expressing his consent. That the plaintiffs did not deliver the wheat to Crenshaw & Co. till December 10, after this sale to Sehrt when they surrendered the elevator receipts upon receiving a check from Crenshaw & Co. for $1,860.30, on defendant bank covering the purchase price of the said

wheat. That the defendant bank collected the said checks for $3,763, and on December 10, 1897, applied part of the same to an overdraft and other checks of Crenshaw & Co., and refused to pay the said plaintiff's check which was on the same day protested. That on the night of December 11, 1897, said defendant after a second demand and notice on that day that plaintiffs claimed the said money, credited $2,000 of the said money upon a past due note of four thousand dollars which it held against Crenshaw & Co., and which the court finds from the evidence was otherwise secured by collateral security, and upon these facts the court finds that the plaintiff ought to recover judgment for $1,860.30 with six per cent interest since the filing of this suit, December 13, 1897, amounting to $1,896.81." The defendant has appealed.

There can be no question that the facts as found by the court are established by abundant testimony. In fact there is no substantial conflict in the evidence except as to what the cashier said at the time Crenshaw delivered the checks to him. At the time the trade was finally closed between Crenshaw and the Sehrt Milling Company and the checks in question were written and delivered, there were present the cashier, Crenshaw, Thomas Byrd, the bookkeeper of Crenshaw, and Jacob Sehrt the president of the Sehrt Milling Company. The following is an extract from the testimony of the cashier as to what took place and what was said on that occasion, to wit: "Q. What was done with the checks by Sehrt? A. Delivered them to Crenshaw. Crenshaw indorsed them in blank and handed them to me. Q. If he said anything to you at the time about those checks, state fully all that he said? A. Well, the understanding was that I was to give him immediate credit for $1,763.02, which I did there and then on his book —on his pass book—deposit book with bank. Q. What was said then? A. While he was indorsing the checks and I was putting down this credit he remarked that he wished to pay the Deal-Brothers and Marshall and Mrs. Burch and O. F. Goodin

for whatever he owed them, for certain different amounts. I would ask how much he owed them; he would tell me about what he owed then. He said he owed Deal Brothers about $1,800. Q. Did you ask him how much he was owing Marshall? A. I knew that from the day before. They left a due bill and the warehouse receipt in the bank. Q. Did you ask how much he was owing Goodin? A. Yes, sir; he told me $300. Q. Did you ask him how much he owed Mrs. Burch? A. Yes, sir; about $600. Q. Give as near as you can the exact language used by Crenshaw to you on that occasion; repeat as near as you can his language? A. He says he wanted to pay Ed. and John Deal $1,800 out of this money; he also named the others as I have named them. Q. State in full? A. Also Judge Marshall $1,013 and Mrs. Burch—I asked what he owed Mrs. Burch; and he says about $600, and O. F. Goodin about $300." In his cross-examination he further testified: "Q. Did you hear Sehrt and Crenshaw at the time Crenshaw gave you the checks, you heard Crenshaw say in Sehrt's presence when he gave you the Sehrt checks that he wanted Deal's wheat paid for out of the money? A. Yes, sir. Q. Why did you say that you did not know that he bought the wheat? A. Well, I presume he bought it. Q. Well, you say that Crenshaw told you when he gave you that three thousand, seven hundred dollars on that occasion that he wanted Deal Brothers and others paid for their wheat out of that money? A. Yes, sir. Q. You did not do it, did you? A. Didn't pay Deal Brothers—no. Q. You applied $2,000 of that money on your own debt. A. Some time afterward. Q. You did that notwithstanding Crenshaw told you in the presence of Sehrt and Tom Byrd and other witnesses, when he gave you the checks, that he wanted the Deal Brothers paid $1,800 out of that money? A. That he wanted to pay them. Q. Didn't you testify that he said he wanted the Deal Brothers paid out of that money? A. Yes, sir; and others. Q. Out of that particular money? A. That he

wanted to pay them.  Q.  Out of that money?  A.  Out of that money, I presume he intended."  *  *  *  "Q.  Then at the time he told you he wanted the Deals paid, you presumed that he meant to pay it out of that money, didn't you say, 'All right.'  A.  I said I would see.  Q.  Every other man says you said 'All right.'  A.  Some say, I said 'All right,' and some say that I said ' I will see.'  Q.  You say that those present understood you to say one thing and some that you said 'I will see?'  Who was present at that time?  A. Crenshaw, Sehrt and Tom Byrd.  Q.  Was that all?  A. Yes, sir.  Q.  You say that some witness understood you to say 'I will see'——what witness was that?  A.  Crenshaw said that I answered 'All right,' Byrd testified that I said 'All right,' and some other words he didn't catch. Sehrt said that I answered 'I will see, all right.'  I testified that I said 'I will see.'  Q.  You are the only witness present but what says you did say 'All right?'  A.  Yes, sir. Q.  Will you swear that you did not say 'All right?'  A.  No, sir; I don't recollect it, though.  I mentioned that fact to Jerry Deal a few hours afterwards."  The other witnesses, viz., Crenshaw, Sehrt and Byrd testified that at the time Crenshaw delivered the checks to the cashier he said to the latter that he wanted him (the cashier) to use the money received from Sehrt to pay the debts of plaintiffs, Goodin, Burch and Marshall, and that the cashier assented and said "it was all right."  It thus appears that the alleged trust was established by the great weight of the evidence.  It is the settled law in this state that a parol trust as to the personal property is valid.  (Kramer v. McCaughey, 11 Mo. App. 426; Heutteman v. Viesselmann, 48 Mo. App. 582, and authorities cited.)  The only requirements are that the terms and beneficaries of the trust be established and ascertained by clear and satisfactory proof.  In the case at bar these conditions are fully met.  The beneficiaries were named, the amounts of their debts were stated, sufficient money

was provided to pay the debts in full, and the checks were delivered to the cashier for deposit in the defendant bank, and the proceeds of the checks were to be held by the defendant to pay the specified debts.    Now, assuming the facts to be as found by the court, which we must do as there was substantial evidence to support the findings, the right of the plaintiffs to maintain the action is beyond dispute.    Where a person receives money which of right belongs to another, the latter may maintain an action therefor as for money had and received, and to maintain such an action it is not essential to show privity of contract in respect of the money or property.    It is only necessary to show that the fund, in equity and good conscience, belongs to the plaintiff, and that the defendant has no right to retain it, from which the law will imply a promise on the part of defendant to pay the money to the plaintiff.    Johnson v. Bank, 116 Mo. 558.

PRIVITY of contract.

The objection urged by counsel that the alleged promise of defendant to pay was not in writing, presents no obstacles to a recovery, for the reason that such a trust, as we have attempted to show, may be created by parol and it is not to be treated as an undertaking to pay the debt of another.    Nor is there any merit in the further contention that the defendant's alleged promise was without consideration, for the assignment and delivery of the checks was a consideration for the undertaking.    Nor can the principle that the bank has the right to apply the amount of a deposit of one of its customers in payment of an overdraft or indebtedness of the customer to the bank, have any application, since the court found that the money was received by the bank to be used in a particular way, and it was unlawful for the officers of the bank to use it for other purposes.    Judy v. Bank, 81 Mo. 404; Utley v. Tolfree, 77 Mo. 307; Clark v. Bank, 57 Mo. App. 277.

The defendant asked various declarations of law, which the court properly refused.    When the trial court makes find-

ings of the fact under the statute instructions have no office to perform.     The judgment is a conclusion of law from the facts as found.     Kostuba v. Miller, 137 Mo. 173; Suddarth v. Robertson, 118 Mo. 293.     Besides the instructions presented immaterial questions.     The simple issue was whether the cashier had received the money under a promise to apply it to the discharge of plaintiffs' debt.

The defendant saved exceptions to the admission and rejection of evidence.     We do not deem it necessary to set out the various assignments.     All of the exceptions pertain to matters which were entirely outside of the true issue.     The court admitted all competent and relevant testimony as to the alleged trust.     Its rulings as to the evidence bearing on immaterial questions could not have prejudiced the defendant.

With the concurrence of the other judges the judgment of the circuit court will be affirmed.     It is so ordered.