BY THE

## ST. LOUIS AND THE KANSAS CITY

# COURTS OF APPEALS

AT THE

## MARCH TERM, 1904.

---

## T. M. YORK, Respondent, v. THE FARMERS BANK OF GARDEN CITY, Appellant.

### Kansas City Court of Appeals, March 7, 1904.

1. **TRIAL PRACTICE: Pleading: Cause of Action: Recovery.** One can not sue on one cause of action and recover on another.

2. **MONEY HAD AND RECEIVED: Action for.** A petition is held to state an action for money had and received; such action lies when one receives money for the use of another and neglects to turn it over upon demand; and it is immaterial how the money came into the defendant's hands.

3. **————: Pleading: Instructions: Conversion.** The instructions set out in the opinion are held to submit the cause on the theory presented in plaintiff's petition and not as an action for conversion; and the mere fact that the jury were required to find the market value of certain mules was an unnecessary imposition on the plaintiff and defendant can not complain thereof.

4. **————: Reasonable Value: Proceeds of Sale.** Where an action is brought against a bank to recover the amount of certain checks taken by plaintiff for mules sold a stock dealer who has deposited the proceeds of two car loads with the bank, which proceeds equal or exceed the purchase price of all the stock, the plaintiff does have to prove the reasonable value of his mules, but is entitled to recover the purchase price.

(127)

5. ——: **Interest: Instructions.** The plaintiff suing for money had and received is entitled to recover interest from the date of his demand; and section 2869, Revised Statutes 1899, applies to actions *ex delicto*.

6. **TRIAL PRACTICE: Instructions.** Refusal to give an instruction which is included in other given instructions is no ground for complaint.

7. **CORPORATIONS: Ultra Vires: Executed Contract.** Where a contract with a corporation is executed by the other party the corporation will not be permitted to plead *ultra vires*, unless its charter makes such excess void or the agreement was against public policy and good morals.

7. **MONEY HAD AND RECEIVED: Evidence: Reversal.** *Held* there was sufficient evidence to send the case to the jury and the admission of irrelevant testimony was not of such material character as to justify a reversal since it could not have influenced the jury.

Appeal from Cass Circuit Court.—*Hon. Wm. L. Jarrott,* Judge.

AFFIRMED.

*A. L. Graves* and *A. A. Whitsitt* for appellant.

(1) The law is well settled in this State that pleadings shall be strictly construed against the pleader. Snyder v. Free, 114 Mo. 367; Overton v. Overton, 131 Mo. 566; Young v. Schofield, 132 Mo. 661; Bales v. Bennington, 141 Mo. 581; Sidway v. Railway, 163 Mo. 372. (2) It is equally true that the plaintiff is bound by the allegations of his petition. Bruce v. Sims, 34 Mo. 251; Speck v. Riggins, 40 Mo. 406; Bank v. Armstrong, 62 Mo. 65; Chapman v. Callahan, 66 Mo. 312; Dorman v. Publishing Co., 70 Mo. 175; Kuhn v. Weil, 73 Mo. 215; Weil v. Poster, 77 Mo. 287; Wilson v. Albert, 89 Mo. 546; Bensieck v. Cook, 110 Mo. 182. (3) An action can not be brought on one cause of action and recovery had on another. Clements v. Yeates, 69 Mo. 623, and cases cited; Sanders v. Karl-

wood, 79 Mo. 278; Finlay v. Beyson, 84 Mo. 664; Jones
v. Loomis, 19 Mo. App. 234; Johnson v. Bank, 116 Mo.
558; Rippee v. Railway, 71 Mo. App. 557; Crother v.
Acock, 43 Mo. App. 318; Trimble v. Stewart, etc., 35
Mo. App. 541; Fisher v. Realty Co., 159 Mo. 562; Ram-
ing v. Railway, 157 Mo. 477; Cole v. Armour, 154 Mo.
333; Huston v. Taylor, 140 Mo. 252. (4) If, however, the
intention was to establish a parol trust as to personalty
by oral testimony, then the rule is that the evidence must
be clear in regard to the subject-matter and purposes of
the trust, and the person or persons who are to take the
beneficial interest.   The evidence in this case falls short
of measuring up to the above standard.   Huetteman v.
Viesselmann, 48 Mo. App. 582; Cramer v. McCaughey,
11 Mo. App. 426; Childs v. Cemetery, 4 Mo. App. 74;
Deal v. Bank, 79 Mo. App. 262. (5) Instructions Nos. 1,
2, 3 and 8 given for the plaintiff, being based on a cause
of action for conversion of the stock, even if the petition
alleged conversion of the stock, and the evidence sus-
tained the allegations of the petition, are erroneous, in
that they peremptorily told the jury if they found for
the plaintiff they would allow him interest on the
amount so found from date of demand.   The question
of allowing interest was one of the discretion of the
jury, not the court, and for this error, the cause should
be reversed.   R. S. 1899, sec. 2869; State ex rel.
Hope, 121 Mo. 36; Carson v. Smith, 133 Mo. 606; Haw-
kins v. Brick Co., 63 Mo. App. 64; Vermillian v. Le-
Clare, 89 Mo. App. 55; Wheeler v. McDonald, 77 Mo.
App. 213; Eagle Co. v. Railway, 71 Mo. App. 626.   (6)
The instructions in this case, defining the measure of
damages to be recovered, show that recovery was sought
and had on cause of action for conversion of the stock.
Carter v. Feland, 17 Mo. 283; Hendricks v. Evans, 46
Mo. App. 313; Baker v. Railway, 52 Mo. App. 602; Mfg.
Co. v. Huff, 62 Mo. App. 124; Spencer v. Vance, 57
Mo. App. 427; Vaughn v. Fisher, 32 Mo. App. 29.

*C. W. Hight* and *T. N. Haynes* for plaintiff.

(1)   The evidence shows that defendant received the money which justly belonged to plaintiff and refused to pay it over after demand; the petition so states, and whether the action be designated one for money had and received, or conversion, it is sufficient.   Johnson-Brinkman Co. v. Bank, 116 Mo. 558; Antonelli v. Basile, 93 Mo. App. 138; Richardson v. Drug Co., 92 Mo. App. 515; Railway v. McLiney, 62 Mo. App. 166; Deal v. Bank, 79 Mo. App. 262; Jacoby v. O'Hearne, 32 Mo. App. 566; Robbins v. Ins. Co., 12 Mo. 380; Maxwell on Code Pleading, p. 247; 4 Wait's Actions and Defenses, 469; R. S. 1899, sec. 539.   (2)   The petition states a good cause of action for money had and received and under the evidence this is the proper remedy. Johnson-Brinkman Co. v. Bank, 116 Mo. 558; Richardson v. Drug Co., 92 Mo. App. 515; Antonelli v. Basile, 93 Mo. App. 138; Deal v. Bank, 79 Mo. App. 262; Maxwell on Code Pleading, p. 247; 4 Wait's Actions and Defenses, 469.   (3)   The terms of the sale to plaintiff and his assignors being cash on delivery, and no cash having been paid, no title passed to Hord, and the latter could convey no title either in the stock or the proceeds, to anyone else.   Johnson-Brinkman v. Bank, 116 Mo. 558; Railroad v. McLiney, 32 Mo. App. 166; Bank v. Railroad, 46 N. W. (Minn.) 342; Benjamin on Sales, sec. 731; 2 Parsons on Contracts (7 Ed.), 624; Woodburn v. Woodburn, 115 Ill. 427; Hodgson v. Barrett, 33 Ohio St. 63.   (4)   There was no agreement that the checks should be received as absolute payment, and there is no presumption that they were so received.   Johnson-Brinkman Co. v. Bank, 116 Mo. 558; see, also, cases cited under proposition 3.   Defendant failed to apply the money placed in its hands for the use of the holders of these checks as it, by an implied contract and as we claim by specific contract, agreed to do, hence it is liable for interest on amount due from date of demand and it was

not error to so instruct the jury. Padley v. Catterlin, 64 Mo. App. 648; Lachner Bros. v. Express Co., 72 Mo. App. 21; Goodman v. Railway, 71 Mo. App. 464. (5) Defendant had the use of plaintiff's money and deprived plaintiff of use of it, hence it is proper to allow interest. Padley v. Catterlin, 64 Mo. App. 648. The statute 1899, section 2869, cited by defendant applies only to actions *ex delicto,* and has no application to this class of cases. Padley v. Catterlin, 64 Mo. App. 648; Goodman v. Railway, 71 Mo. App. 464.

SMITH, P. J.—The petition is in three counts, in the first of which it is stated that the plaintiff was the owner and entitled to the possession of eight mules which were shipped by A. F. Hord from Harrisonville and consigned to McFarlane-Evans Co., East St. Louis, and by that company sold and the proceeds arising from such sale, amounting to $950, were received by defendant, an incorporated bank, located at Garden City, in Cass county; that the defendant knew at the time of the receipt of such proceeds that the plaintiff was entitled thereto and that the plaintiff had demanded of defendant the payment of such proceeds, which the latter had refused. The facts stated in the second and third, except as to parties, animals and amount for which they were sold, are very much the same as those stated in the first. It was further stated in said second and third, however, that the plaintiff had acquired by assignment the causes of action therein stated, and had a right of action therein. The answer was a general denial.

The evidence tended to establish about these facts, viz.: That said Hord, a trader in live stock, resided in the vicinity of where said defendant bank was located and though without any capital of his own was by the assistance of defendant enabled to carry on a rather extensive trade in live stock. During the twelve months preceding the transaction which gave rise to this action

his business with defendant had amounted to something like seventy thousand dollars.   Under an arrangement with defendant he carried on his trading operations in about this way:  He would purchase here and there horses, mules or other stock giving his check on defendant therefor and making on each check the kind of stock for which it was given.   These checks would be paid by defendant and when one or more carloads of such stock was purchased and ready for shipment he would draw a sight draft on the commission merchant to whom the stock was consigned and in this way cover the checks which he had given the persons from whom he had made his purchases.   Further evidence was adduced which tended to show that along early in January, 1903, it was discovered by defendant that Hord had not been successful in his trading and that the aggregate amount of his checks exceeded his drafts and that he was behind with defendant to a considerable amount.   The defendant became restless and uneasy and began to look about to see how it could best even up its account with Hord who, in the meantime, carried on his trading operations without serious interfernce, giving his checks and drafts as he had been accustomed to do.

On January 9, 1903, the defendant's cashier, Stevens, called Hord up by telephone at Archie and inquired how he had come out on his shipment made on the sixth, to which Hord answered that he had made money.   Stevens then inquired when he was going to ship again, to which Hord answered that he had bought one horse that evening and was going to Butler, Adrian and Harrisonville to buy the rest.   Hord in this telephone talk told Stevens that he would mail him a draft that day and when the shipment was complete he would make a draft for the *full amount of the cost of the horses.*   Stevens responded, "all right."   Hord then said:   "You O. K. the checks I am giving and send me a check book. . . .   I am going to buy horses and if any of the banks call you up you can tell them it's

all right for these horses;" and to which Stevens replied: "Yes, sir." Stevens sent Hord the check book to Archie and the latter sent him a draft for $1,800 on McFarlane-Evans Co., with instructions, "to hold it until the two carloads of horses were made up and then he would made a draft for the full amount, when the former draft could be returned to him." On January 12, Stevens wrote Hord that, "your account is barely even since the $1,800 draft is in. Don't buy any more horses at this time than you can ship out clean."

On the same day, Hord answered the above letter saying that, "I will buy no more horses than I can ship out but please take care of these checks. I will wire draft Saturday in place of the one you hold. Will ship hogs tomorrow and will wire draft on them.   . . . Please don't turn down my checks until I get this load off," etc.

On the fifteenth, Hord inclosed a letter which he had received from his commission merchant on which he wrote that the horses and mules he had been buying that week would make money and that he would ship out Saturday and wire him a draft. Hord went from Archie to Butler and Adrian where he bought horses and mules amounting to about $1,000, giving his checks for the purchase price. On the fourteenth he went to Harrisonville where he bought the eight mules of plaintiff and the horses of Williams and Haines, and these, with others purchased there, made up a car which with that purchased at Adrian he shipped on the seventeenth. The purchase price of plaintiff's mules was $950 and for which Hord gave his check on defendant. He also gave his check to the plaintiff's assignors for the price of each of the horses severally purchased of them. These checks were deposited in a Harrisonville bank for credit and by it sent to defendant for payment, which was refused.

When the two carloads of horses and mules were shipped, Hord telegraphed to Stevens to draw a draft

on McFarlane-Evans Co. in his name for $3,700.  The draft was accordingly drawn and paid.  The mules brought $56 in excess of the amount of the draft which excess was sent to defendant for Hord's credit.  The defendant, it seems, paid all of the checks given by Hord for the two carloads of horses and mules except those purchased of plaintiff and his assignors, Williams and Haines.  The checks given the latter were not presented to defendant until after the draft for the $3,700 had been paid to it.  The cost of the two carloads was approximately that of the draft, so that the proceeds of the sale received by the defendant was sufficient to cover all of the checks given for the purchase price of them. The plaintiff and his assignors sold their animals to Hord for cash.  There is no pretense that they accepted the checks as so much cash.  The defendant, it seems, did not apply the proceeds of the $3,700 draft, as he was directed by Hord, but applied it in part to other indebtedness of his to it.

At the conclusion of the evidence the court gave to the jury a number of instructions for both parties, and amongst those for plaintiff were the following:

"1.  The court instructs the jury that if they believe from the evidence that plaintiff York on January 17, 1903, was the owner of and sold to A. F. Hord the live stock mentioned in first count in the petition; that said York received from said Hord his (Hord's) check for the same on defendant bank; that said transaction was a cash sale; and that there was no agreement between Hord and York that said check should be received as a cash payment; that said check was duly presented by said York to said defendant bank for payment, and payment thereof refused; that said check has not been paid; that said Hord sold and shipped said live stock to McFarlane-Evans Company of East St. Louis, Ill.; that said McFarlane-Evans Company paid to said Hord the purchase price for said live stock; that said Hord deposited or caused to be deposited the proceeds of such

sale in defendant bank; that the amount of said deposit was equal to or greater than the fair market value of the' live stock in said shipment to McFarlane-Evans Co.; that said defendant bank at the time it received such deposit knew or had reason to believe (as defined by other instructions) that the live stock so sold and shipped to said McFarlane-Evans Company had not been paid for by said Hord, then the title to said live stock mentioned in the first count of the petition, and the title to the proceeds of sale thereof did not pass to said Hord, but remained the property of said York, and if said defendant bank at the time it received the proceeds of the $3,700 draft (if said proceeds were so received) knew or had reason to believe that said draft was placed in defendant bank by said Hord with the intention that the proceeds should be used to pay the checks given by said Hord for the purchase of said shipment of live stock to McFarlane-Evans Company, and afterwards if said York or anyone for him, made a demand on said defendant bank for the reasonable market value (at time of such demand) of the live stock mentioned in said first count of petition, owned by him as aforesaid, and that said defendant bank refused to pay to said plaintiff such value of such live stock, then your verdict should be for plaintiff on the first count in petition contained, in an amount not exceeding the sum of $950 together with interest on amount so found from date of such demand at the rate of six per cent per annum.

"4. The jury are further instructed that direct and positive proof to defendant bank of the fact that at the time said bank received the proceeds of said draft from McFarlane-Evans Company that said bank knew or had reason to believe that the live stock so sold and shipped to McFarlane-Evans Company had not been paid for by said Hord, is not necessary, but the jury are entitled to take into consideration all the facts and circumstances and the previous course of dealing be-

tween defendant bank and said A. F. Hord, and there-
from find that the bank had such notice, if they believe
that such facts and circumstances and such previous
course of dealing fairly warrant the inference of such
notice; and if such facts and circumstances and pre-
vious course of dealing were sufficient to put a person
of ordinary prudence and caution on inquiry, then that
amounts to notice.

"5. The court instructs the jury that if they be-
lieve from the evidence that the defendant bank, the
Farmers' Bank of Garden City, at the time it received
the draft on McFarlane-Evans Company, of East St.
Louis, Illinois (if you find it received such draft) from
said A. F. Hord, knew or had reason to believe that said
draft was placed in defendant bank by said Hord with
the intention that the proceeds should be used to pay
the checks given by said Hord in the purchase of said
shipment of live stock to said McFarlane-Evans Com-
pany, then the defendant bank had no right to appro-
priate the proceeds of said draft to any other purpose
than to the payment of such checks, and in determining
whether or not the bank had such knowledge or belief,
you will take into consideration all the facts and circum-
stances detailed in evidence, including the previous
course of dealing between the said defendant bank and
said A. F. Hord.

"6. The jury are further instructed that direct
and positive proof to defendant bank of the purpose for
which said A. F. Hord deposited the McFarlane-Evans
Company draft is not necessary, but the jury are enti-
tled to take into consideration all the facts and circum-
stances and the previous course of dealing between the
bank and said A. F. Hord, and therefrom find that the
bank had such notice, if they believe that such facts and
circumstances and such previous course of dealing
fairly warrant the inference of such notice; and if such
facts and circumstances and previous course of dealing
were sufficient to have put a person of ordinary pru-

dence and caution on inquiry, then that amounts to notice.

"7.    With reference to the checks given to plaintiff, Haines and Williams, by said Hord for live stock, the court instructs the jury that if at the time of giving said checks there was no agreement between plaintiff, Haines and Williams and said A. F. Hord that said checks should be taken by plaintiff, Haines and Williams as payment, whether they were paid or not, then the giving of said checks was not a payment, unless the checks were afterwards paid."

The plaintiff's second and third are based on the second and third counts of the petition and are similar in expression to the first.

The defendant assails the judgment on the ground that the cause of action stated in the petition is that for money had and received, while the instructions already quoted submitted it on the theory of a conversion, and therefore the petition states one cause of action and the recovery was had on another.    The general rule is well established in this State that a party can not sue upon one cause of action and recover upon another. Clements v. Yeates, 69 Mo. 623, and cases cited in defendant's breif.    Doubtless, the petition contains several redundant and superfluous allegations; but when stripped of these it sufficiently states a cause of action for money had and received for the use and benefit of the plaintiff. *Utile, per inutile non vitiatur.*    The law is, when a person who has received money for the use of another neglects or refuses to pay it over to his *cestui que trust,* the person entitled thereto may maintain an action against him for money had and received.    And it is of no importance how the money came into his hands if the plaintiff is legally entitled thereto.    Johnson v. Bank, 116 Mo. 558; Richardson v. Drug Co., 92 Mo. App. 515; Antonelli v. Basile, 93 Mo. App. 138; Deal v. Bank, 79 Mo. App. 262.    And in Clark v. Bank, 57 Mo. App.

l. c. 286, it was said: "By the well-settled doctrine of equity a constructive trust arises whenever one party has obtained money which does not equitably belong to him and which he can not in good conscience retain or withhold from another who is beneficially entitled to it, as for example, as when money has been acquired through breach of trust or violation of a fiduciary duty, and the like. Pomeroy's Equity, sec. 1047. In Johnson v. Payne & Williams Bank, 56 Mo. App. 257, it is stated to be a rule deducible from many authorities, that a bank can not use a deposit to pay the individual debt of the depositor due it when it when it has knowledge that the deposit is held by the depositor in a fiduciary capacity and does not belong to him personally."

We can not uphold the defendant's contention that the theory on which the plaintiff's instructions submitted the case was variant from that of the petition. Before the jury were authorized by the plaintiff's first instruction to return a verdict for him it was required to find from the evidence the reasonable market value of plaintiff's mules at the time of the demand for payment of the check. This was the imposition of a burden on plaintiff which the law did not require in order to entitle him to recover, but its imposition could in no way prejudice the defendant. If the other facts hypothesized in the instruction were found for plaintiff he was entitled to recover and this without departing from the theory of the first count of his petition.

It is true, the evidence does not show the amount for which plaintiff's mules were sold on the market by Hord's commission company, but it does show that the two carloads of horses and mules purchased by Hord and shipped on the 17th of January, and in which shipment plaintiff's mules were included, cost him—Hord —approximately $3,700 and that the same were sold on the market by his commission company for an amount in excess of that and that the draft for a like amount— $3,700—was given to and collected by defendant and was

for that much of the proceeds of said sale. It is thus seen that the amount of the proceeds of the sale traced into defendant's coffers equalled the aggregate of all the checks which were given by Hord for the purchase price. This amount was sufficient to pay each one of such checks in full and as plaintiff's check was one of them he was entitled to have it paid out of the fund. If the amount of the fund so received had been insufficient to pay all of them, then it would have been necessary for plaintiff to show the price for which his mules sold, otherwise it would have been impossible to determine what proportion of the fund he was entitled to receive.

We are unable to yield our assent to the defendant's contention that the plaintiff's instructions, or any of them, submitted the case to the jury on the theory of a wrongful conversion. If the defendant received the fund with notice to whom it belonged or for whose use and benefit, and then refused to pay it over to those entitled thereto, it was guilty of conversion. But even if it had wrongfully converted the fund to its own use, this did not relieve it from liability in an action for money had and received. The action for money had and received can be maintained irrespective of whether it is maintainable as an action of trover and conversion. Johnson v. Bank, supra; Antonelli v. Baselle, supra.

The defendant further contends that the court erred in telling the jury, as it did by the giving of plaintiff's instructions, that if it found for him to allow interest on the amount so found from the date of the demand at the rate of six per cent per annum. This was a correct expression of the rule in cases of this kind, In Padley v. Catterlin, 64 Mo. App. l. c. 629, a similar question was examined and passed upon adversely to the defendant's contention here. And a like ruling was made by us in the latter case of Goodman v. Railway, 71 Mo. App. 460. There is nothing in Carson v. Smith, 133 Mo. l. c. 617, that in any way militates against the

rule announced by us in the two cases just cited. The latter are actions for the "wrongful and willful taking and converting to their own use" of a stock of merchandise, and the statutory rule as to the allowance of interest applied in a case of that kind can have no application to one like this for money had and received. The statute, section 2869, Revised Statutes, has no application to actions *ex contractu* but to those in form *ex delicto*.

The defendant complains of the action of the court in refusing its thirteenth instruction. While it is somewhat unintelligible and wanting in clearness of expression, we think it is substantially the same as its number ten, which was given; and therefore the action of the court in that respect affords no just ground for complaint.

The defendant objects that the court erred in refusing its fourteenth which told the jury to disregard any and all testimony tending to establish a contract between it through its cashier and Hord, permitting the latter to overdraw his account. The defendant had previously objected to the introduction of the evidence tending to prove the contract and arrangement between its cashier and Hord, whereby the former was to pay the latter's overdraft for stock purchased, and the latter was to cover such overdrafts by posting his draft on his commission company to whom the stock so purchased was shipped. The objection thus raised was that the bank in entering into such an arrangement exceeded its power—that such an arrangement was *ultra vires* the corporation. The defendant bank, it is admitted, was a banking corporation organized and existing under the statutes of this State.

It will have been seen that the contract or arrangement between the bank and Hord was executed so far as the latter was concerned. He drew the checks for the stock purchased and shipped and after such shipment gave defendant his draft on his commission company

for an amount amply sufficient to cover the checks so drawn on defendant. The defendant's objections are fully answered by what is said in City of Goodland v. Bank, 74 Mo. App. 365. In that case the authorities are fully cited and reviewed and the conclusion reached that, "where the act is not wrong *per se,* where the contract is for a lawful purpose in itself, as in the present case, and has been entered into in good faith and fairly executed by the party who seeks to enforce it, we must assent to the doctrine of those authorities which hold that the excess of the corporate powers of the contracting party which has received the benefit of the contract is an unconscionable defense which may not be set up to exempt from liability the party pleading it." And in the same case it was further held that, a violation of a charter can not be taken advantage of collaterally or incidentally but only on a direct proceeding instituted for that purpose. And it was further held in that opinion that in a collateral proceeding to declare acts of a trading corporation void it must be shown to be the intention of the charter, as gathered from its terms, not only to restrict the business of the corporation to certain things, but in. addition to declare that when it exceeds these restrictions the act should be void. If such intention does not exist in the charter the State alone can question such acts as *ultra vires* except when the contract is against public policy and good morals. The contract or arrangement here was not *malum in se* or *malum prohibitum,* but was unauthorized by defendant's charter—the statute. It is clear from the authorities cited in the case we have just quoted from that the defendant entered into a contract or agreement that was in excess of its charter powers (article 8, chapter 12, Revised Statutes) and that the contract and arrangement was executed by the other contracting party, and therefore an enlightened public policy requires that such contract and arrangement be upheld and enforced, rather than evaded.

It is true that Hord is not suing on the contract and arrangement in issue, still, we think the plaintiff is sufficiently in privity with him to enforce a liability of defendant resulting from such contract and arrangement; and nothing is seen in Johnson v. Bank, 173 Mo. 153, at variance with what we have just stated the law to be as applicable to the present case. In the case just cited the powers of national banks as derived from the Federal statute under which they are created, are discussed. In the course of the opinion it is stated that, "it will be of no profit in this case to consider the rules of law adopted by the several States bearing upon the power of banks organized by authority other than by the Federal government to enter into such contracts or to interpose the defense of *ultra vires* after the other party to the contract has performed it." It results that whatever is said in that case relates to the powers of national banks under the Federal statutes and not to those organized under the laws of a State.

The defendant still further complains that its instruction in the nature of a demurrer to the evidence should have been sustained. The facts which the evidence tends to show, and to some of which we have made reference at the beginning, we think fully justified the submission of the case to the jury.

As said in Johnson v. Bank, supra, "there was much irrelevant testimony introduced by plaintiff over the objections of defendant, but none of it was of such materiality as to justify a reversal on that ground, as it could not possibly have had any influence on the jury in making its verdict."

The judgment which was for plaintiff will accordingly be affirmed. All concur.