[S. F. No. 1046.   Department One.—September 1, 1898.]

CORNELIA E. BOOTH et al., Appellants, v. OAKLAND BANK OF SAVINGS et al., Respondents.

Trust—Bank Deposit Payable to Beneficiaries—Death of Depositor.—A trust for the benefit of two sisters of the depositor of money in a savings bank, in the residue remaining at her death, is sufficiently proved by evidence showing that, in her lifetime, the deposit was changed by the bank, upon her order, so as to make it payable to the individual order of either of her sisters, or of herself, for the purpose orally declared to the bank of arranging the deposit so that her sisters could draw it at her death, and have the immediate benefit of it without probate of her estate, and by her addressing them a letter stating what she had done, and that upon her death they could draw the money, and divide it equally between them, and directing them where they could obtain the bank-book.

Id.—Trust in Personal Property, How Created.—A trust in personal property need not be in writing, and no special form of words is required to create it. The trust in the remainder of the bank deposit for the benefit of the sisters of the depositor was sufficiently created as to the trustor and beneficiaries, under sec-

tion 2221 of the Civil Code, and was also sufficiently created, as to the trustee, under section 2222 of the same code.

ID.—ACCEPTANCE BY BENEFICIARY—DEMAND—ACTION TO ENFORCE TRUST.—The code does not require that the beneficiary shall be informed of the trust, or shall express an acceptance of it. A demand made by the beneficiaries upon the bank for payment of the deposit, and an action to enforce the trust, is a sufficient acceptance by them.

ID.—MUTUAL CONSENT OF TRUSTOR AND TRUSTEE—UNRESCINDED TRUST.—The mutual consent of the trustor and trustee creates a trust of which the beneficiary may take advantage, in so far as it has not been rescinded or revoked.

ID.—POWER OF TRUSTOR TO WITHDRAW DEPOSIT—REVOCATION IN PART.—The power of the trustor to withdraw the deposit does not affect the validity of the trust, as to the remainder thereof; and it is immaterial whether such power be considered a power of revocation under section 2280 of the Civil Code, or a trust in her favor of so much of the fund as she might withdraw, and in favor of her sisters, of the remainder. A power of revocation, exercised as to part of the trust property, does not affect the trust as to the remainder.

ID.—POSSESSION OF BANK-BOOK.—The possession of the bank-book by the depositor, until her death, is immaterial, and does not affect the known trusteeship of the bank for the sisters, as to the residue of the deposit, after her death.

ID.—PLEADING—OWNERSHIP OF DEPOSIT—EVIDENCE.—In an action to enforce the trust, it is sufficient to allege the present ownership of the deposit by the plaintiffs without alleging its original ownership by the depositor. The former ownership is matter of evidence, which need not be directly alleged.

ID.—PRESUMPTION—DEPOSITOR'S OWNERSHIP—ESTOPPEL.—The presumption is, that the deposit made originally by the depositor in her own name, was of her own money; and the bank is estopped to deny it, unless a claim is made by another who shows a better right.

ID.—DEFECT IN COMPLAINT CURED BY ANSWER.—Where the executors of the estate of the deceased depositor allege in their answer that the deposit was her property, and now belongs to her estate, any defect in the complaint in not alleging such ownership is cured by the answer.

APPEAL from a judgment of the Superior Court of Alameda County, and from an order denying a new trial. John Ellsworth, Judge.

The facts are stated in the opinion.

M. M. Estee, Charles A. Shurtleff, and F. E. Whitney, for Appellants.

The bank was bound by its contract to pay the money to the plaintiffs. (1 Morse on Banks and Banking, sec. 322; *Green v. Odd Fellows' etc. Bank,* 65 Cal. 71; *Brahm v. Adkins,* 77 Ill. 263; *Morgan v. Bank of N. Y.,* 1 Duer, 434; *Bank of British N. A. v. Merchants' Nat. Bank,* 91 N. Y. 106; *McGough v. Jamison,* 107 Pa. St. 336; *Janin v. London etc. Bank,* 92 Cal. 14; 27 Am. St. Rep. 82; *McCord v. California Nat. Bank,* 96 Cal. 197.) A promise made to another for the benefit of a third person may be sued upon by the beneficiary, though the consideration does not move from him. (2 Morse on Banks and Banking, sec. 500; *Bohanan v. Pope,* 42 Me. 93; *Beers v. Robinson,* 9 Pa. St. 229; *Barker v. Bradley,* 42 N. Y. 316; 1 Am. Rep. 521; *Crocker v. Higgins,* 7 Conn. 347; *Barringer v. Warden,* 12 Cal. 311; *Ross v. Curtis,* 30 Barb. 238; *Harrison v. Wright,* 100 Ind. 515; 50 Am. Rep. 805.) An unrescinded contract made expressly for the benefit of a third person may be enforced by him. (Civ. Code, sec. 1559.) There was a sufficient gift *causa mortis,* without delivery of the bank-book. (*McElroy v. National Sav. Bank,* 8 N. Y. App. Div. 192; 40 N. Y. Supp. 340, 422; *Beaver v. Beaver,* 117 N. Y. 428-30; 15 Am. St. Rep. 531; *Estate of Griffiths* (Oct. 1895), Lackawanna Leg. News, 317; *Martin v. Funk,* 75 N. Y. 134; 31 Am. Rep. 446; *Pierce v. Boston etc. Sav. Bank,* 129 Mass. 425; 37 Am. Rep. 371.) The facts sufficiently prove a trust for the plaintiffs, and delivery of the bank-book is immaterial to such trust. (21 Am. & Eng. Ency. of Law, 733, 734; Thornton on Gifts, 121; *Blasdel v. Locke,* 52 N. H. 238; *Smith v. Ossippee Valley Sav. Bank,* 64 N. H. 228; 10 Am. St. Rep. 400; *Gerrish v. New Bedford Inst.,* 128 Mass. 159; 35 Am. Rep. 365; *Hannon v. Sheehan,* 19 N. Y. Supp. 698.)

E. M. Gibson, and Ben. F. Woolner, for Executor of Frances A. Bell, Respondents.

The complaint is insufficient in not alleging that Frances A. Bell owned the money. The complaint must warrant the relief asked. (*Sigourney v. Zellerbach,* 55 Cal. 440; *Buena Vista etc. Co. v. Tuohy,* 107 Cal. 243.) It is defective in not alleging that plaintiffs accepted the gift. (*De Levillian v. Evans,* 39 Cal. 120.) There was no gift *causa mortis,* for want of completed delivery

and loss of dominion by the donor. (*Daniel v. Smith*, 64 Cal. 346; 75 Cal. 548; *Baskett v. Hassell*, 107 U. S. 602.) Also, for lack of impending death of the donor. (*Zeller v. Jordan*, 105 Cal. 143; *Irish v. Nutting*, 47 Barb. 370; 8 Am. & Eng. Ency. of Law, 1346.) A court of equity cannot aid an imperfect gift, by construing it into a declaration of trust. (*Flanders v. Blandy*, 45 Ohio St. 108; *Young v. Young*, 80 N. Y. 422; 36 Am. Rep: 634; *Marcy v. Amazeen*, 61 N. H. 131; 60 Am. Rep. 320.)

HAYNES, C.—This appeal is by the plaintiffs from a judgment of nonsuit and from an order denying their motion for a new trial.

The action was brought to recover from said bank certain moneys originally deposited by Frances A. Bell, and her executors were made parties because of a claim made by them of a right to receive and control said money as a part of her estate. The bank does not question its liability to some one, and therefore its counsel does not appear upon respondents' brief.

Frances A. Bell died in the city of Oakland January 27, 1895, in which city she had resided for many years. She was a widow, and, so far as the record shows, without children or any relatives except her two sisters, Cornelia E. Booth and Aurelia L. James, both of whom resided in the city of Chicago. Aurelia L. James, originally a plaintiff in this action, died during its pendency, and her administrator was substituted. The defendants Taggart and Montgomery are the executors of the will of said Frances A. Bell, deceased.

On and prior to May 17, 1893, Mrs. Bell had on deposit with said savings bank $8,503.99, and on that day she drew out $3,300, leaving on deposit $5,203.99.

Samuel Breck, Jr., teller of the bank, called for plaintiffs, testified that he saw Mrs. Bell in regard to her said savings account on the date last above mentioned; that she was desirous of adding the names of her sisters, so that in the event of her death they could draw the money without probate proceedings; that he asked her if she wanted the account, in the event of her death, made payable to her sisters jointly, and she said she wanted it so that either one could draw it after her death; that he immedi-

ately prepared a blank for her to sign, and she signed it in his presence.   Said instrument or order is as follows: "To Oakland Bank of Savings, May 17, 1893. *In re* savings deposit 7041, in my name.   Pay to the individual order of either Cornelia E. Booth or Aurelia L. James, or myself.   Signed, Frances A. Bell."

That Mrs. Bell furnished the signatures of her said sisters from letters which she had at that time, and pasted them in the signature book, and the bank added said names to the pass-book, and on the same day, in like manner, changed the account in the ledger; that as to her reason for changing the account, he could not recall the language she used, but the substance was that she wanted to fix the account so that in the event of her death her sisters, who were in the east, could draw her money without the estate being probated, and that she said nothing about who was to draw the money during her life; that he told her at the time in putting these names in that they could draw the money in her lifetime, and that she answered, it made no difference, they would not do it.

The evidence further shows that Mrs. Bell was greatly attached to her sisters, that for several years she had been afflicted with heart disease, having frequent "spells" or acute attacks; that she frequently stated to her friends that she had but a short time to live, that she expected to die in one of these attacks and desired to so arrange her money then in said savings bank so that her sisters could have the immediate benefit of it without waiting for administration upon her estate.   She was a woman of deep religious convictions, a regular attendant at church, and died upon the street while returning from church in the manner and from the cause which she had anticipated.

Mrs. Bell informed her sisters of the disposition she had made of the money in the savings bank by letter, which reads as follows:

"Dear sisters Aurelia and Cornelia: By putting your names on my bank-book, and giving your signatures to the bank, I find that if anything should happen to me you can draw the money that may be to my credit, dividing equally between you two. This seems the better way for me to arrange matters; otherwise all money, with mortgages, would have to pass through probate,

making a delay of months before you could get anything. You will see the advantage of having money in savings bank rather than in investment—it would take so long to realize upon. It will be necessary to leave bank-book here; no one can draw money without order from me, and only you two in the event of my death. Mrs. Beeny will take charge of the book. I have all confidence in her attending to my request. I cannot tell what may be in bank; whatever it is just divide it equally between you two. My will provides for others. You can communicate with Mrs. J. H. Beeny, Centennial, 14th street, Oakland, and she will tell you what to do."

In the fall of 1893 Mrs. Bell visited her sisters in Chicago, and then stated to them "that she had but a short time to live and had deposited the said sum of money with the said bank to the three names jointly, for the use of her sisters Aurelia L. and Cornelia E., and then and there stated that it was subject to the check of either sister on demand," and "that she had another account in some bank in San Francisco which was in her own name only." Other evidence of a similar character was given, but need not here be repeated.

The ground for the motion for nonsuit was that plaintiffs have failed to prove by competent testimony either an absolute gift to her said sisters, or a gift made by her in view of death.

There can be no doubt of the intention of Mrs. Bell in this matter, and that intention should be consummated if the law will permit it; and if there is any ground upon which the evidence would justify a judgment in favor of the plaintiffs the motion for a nonsuit should have been denied.

The evidence falls far short of establishing a completed gift from Mrs. Bell to the plaintiffs; and, although there are features in the case resembling a gift *causa mortis*, there are other features which distinguish it from such a gift; but these need not be discussed, as there was evidence offered on behalf of the plaintiffs to show that Mrs. Bell purposed to create a trust for the benefit of the plaintiffs, and that the trust was accepted by the bank.

It is well settled that a trust in personal property need not be in writing, and it is equally well settled that no set form of words are necessary to create a trust.

The Civil Code, section 2221, provides: "Subject to the provisions of section 852, a voluntary trust is created, as to the trustor and beneficiary, by any acts or words of the trustor indicating with reasonable certainty: 1. An intention on the part of the trustor to create a trust: and 2. The subject, purpose, and beneficiary of the trust."

The bank teller testified that Mrs. Bell wanted the deposit made payable so that "either one of her sisters could draw it after her death." The substance was that she wanted to fix the account so that in the event of her death her sisters, who were in the east, could draw her money without the estate being probated. She said nothing about who was to draw the money during her life. "I told her at the time in putting these names in, that they could draw the money during her lifetime. She answered, it made no difference. They would not do it."

This testimony and the transaction between Mrs. Bell and the bank, taken with the letter addressed to the plaintiffs informing them of what she had done and what they could do and where they could obtain the pass-book, would have authorized the court, in the absence of any other evidence, to find that it was her purpose to create a trust in their favor. (*Blasdel v. Locke,* 52 N. H. 238; *Bath Sav. Inst. v. Hathorn,* 88 Me. 122; 51 Am. St. Rep. 382; *Marlin v. Funk,* 75 N. Y. 134; 31 Am. Rep. 446; *Mabie v. Bailey,* 95 N. Y. 206; *Cunningham v. Davenport,* 147 N. Y. 43; 49 Am. St. Rep. 641; *Gerrish v. New Bedford Inst. for Savings,* 128 Mass. 159; 35 Am. Rep. 365.)

The code does not require that the beneficiary shall be informed of the trust, or shall express an acceptance. If an acceptance is necessary, the demand made by these beneficiaries upon the bank, and this action to compel the execution of the trust, is certainly sufficient.

That as to the trustee a trust was created, and accepted, is clear. (Civ. Code, sec. 2222.)

"The mutual consent of a trustor and trustee creates a trust of which the beneficiary may take advantage at any time prior to its rescission." (Civ. Code, sec. 2251.) This trust was not rescinded.

The circumstance that Mrs. Bell retained the power to with-

draw the deposit does not affect the validity of the trust. Section 2280 of the Civil Code provides: "A trust cannot be revoked by the trustor after its acceptance, actual or presumed, by the trustee and beneficiaries, except by the consent of all the beneficiaries, unless the declaration of trust reserves a power of revocation to the trustor, and in that case the power must be strictly pursued."

I do not think it necessary to determine whether the control over the fund reserved by Mrs. Bell is to be regarded as a power of revocation, or whether the whole transaction is to be regarded as a trust in her favor of so much of the fund as she might see proper to withdraw in her lifetime, and of the remainder for her sisters. In either case the practical result is the same; for a power of revocation as to the whole may be exercised as to a part, and, when so exercised, does not affect the remainder.

The court, therefore, instead of granting a nonsuit should have determined whether the evidence was sufficient to create such trust and rendered its judgment accordingly.

I think the view I have taken of this case, and the conclusion reached, is fully sustained by this court in the case of *Hellman v. McWilliams*, 70 Cal. 449. That action was brought to determine whether the estate of Eli W. Hawkins, deceased, or his minor children were entitled to certain money in the hands of the plaintiff.

In September, 1879, there was due to Hawkins from the Odd Fellows Savings Bank the sum of $14,334, evidenced by a passbook of said bank, which was then in liquidation. Hawkins made a verbal assignment of said money to Hellman for the use and benefit of the minor children of Hawkins, but reserving to himself the right to draw such sums of said money from the trustee as he might deem proper for his own use.. To facilitate the collection of the money from the bank, Hawkins, at Hellman's request, made a written assignment of said claim to the Bank of California, and said bank collected and paid over to Hellman $8,959.20, of which sum Hawkins drew at different times prior to his death $6,271.44, leaving in the hands of Hellman $2,687.76, and remaining uncollected $5,375.53. The court below found there was a trust, and that the children were en-

titled to the money remaining in the hands of Mr. Hellman and that remaining uncollected from the Odd Fellows' Bank; and the judgment was affirmed.

In the case at bar, two or three small amounts were withdrawn, and other deposits made by Mrs. Bell, but the amount on deposit at the time of her death exceeded that on deposit on May 17, 1893, and no new direction appears to have been at any time given to the bank.

The possession of the bank-book from the time the deposit was changed to the time of Mrs. Bell's death is immaterial. The bank had full knowledge of the transaction, and that it held the deposit after her death solely as trustee for the plaintiffs.

It is contended by respondent that the complaint does not state a cause of action. A demurrer upon that ground was interposed and overruled. The point made by respondent is that it is not alleged that Mrs. Bell "was the owner of the money at the time it was deposited, or at any time."

The complaint alleges that Mrs. Bell made the deposit, and that plaintiffs are the owners of it, and entitled to receive it.

The ownership of the plaintiff is all that is material to be alleged. As to the former ownership, that is only a matter of evidence which need not be directly alleged. Besides, the presumption is that the money Mrs. Bell carried to the bank and deposited in her own name was her money, and the bank is estopped to deny it, unless a claim is made by another who shows a better right; and the executors in their answer admit that they claim that the deposit was the property of Mrs. Bell at the time of her death, and now belongs to her estate. If the complaint were defective in the particular claimed, the defect is cured by the answer.

I advise that the judgment and order appealed from be reversed.

Chipman, C., and Belcher, C., concurred.

For the reasons given in the foregoing opinion the judgment and order appealed from are reversed.

Harrison, J., Garoutte, J., Van Fleet, J.