[Civ. No. 641.   Third Appellate District.—October 22, 1909.]

GENEVA C. CAHLAN and LENA CAHLAN, Respondents, v. BANK OF LASSEN COUNTY et al., Appellants; WM. A. SCHOLL et al., Interveners, Appellants.

ACTION TO ESTABLISH TITLE TO BANK STOCK—TRANSFER AND DIVIDEND —PLEADING — ULTIMATE FACTS — EVIDENCE SHOWING TRUST.— Under a complaint in an action to establish title to bank stock and to enforce a transfer thereof on the books of the bank, and the payment of a dividend thereon, which alleges the ultimate facts of the ownership and possession of the stock which stands on the books in the name of a deceased person, who indorsed the same in his lifetime, and which is alleged to have been assigned and delivered to plaintiffs, evidence may be given to establish such alleged ownership and possession, without further allegation, by showing that plaintiffs' ownership originated in a trust created by the decedent in his lifetime in said stock for the benefit of the plaintiffs, and that, in pursuance of said trust, the stock was delivered to plaintiffs by his executors.

ID.—PROOF OF OWNERSHIP—TRUST A NECESSARY PART OF PROOF.—The proof of the ownership and possession of the shares of stock alleged made necessary a disclosure of all of the facts out of which was to appear the ultimate fact of ownership, which showed that the shares were held in trust by the original owner thereof for the plaintiffs, and that their title and possession came to them in execution of that trust, shown by his indorsement thereof, and written statement of their ownership, and delivery of the shares to them by his executors.

ID.—ULTIMATE FACTS ONLY REQUIRED TO BE ALLEGED.—The ultimate facts only which entitled the plaintiffs, as owners and possessors of the shares of stock, to the relief demanded, were required to be alleged. Probative facts are not required to be alleged, but are matter of proof. The averments of original ownership by the decedent in his lifetime, the transfer by him and possession in the plaintiffs, was sufficient to admit the evidence in support thereof, though it showed a trust in such owner.

ID.—OWNER OF STOCK COMPETENT TO CREATE A TRUST.—It was competent for the owner of the stock to become the trustee of the trust created by himself therein for the benefit of the plaintiffs. One who owns property may so deal with it, while retaining the legal title, as to make himself a trustee for the benefit of another

ID.—TRUST PROPERTY RETAINED UNTIL DEATH—DIVIDENDS ON TRUST SHARES DURING LIFE.—The circumstance that the shares of stock held in trust for the plaintiffs were retained in the trustee's possession until his death, with power to receive the dividends thereon during his life, did not affect the validity of the trust in equity. In such cases, equity will look to the substance of the act alone, and will carry out the intentions of the trustee in the absence of fraud.

ID.—TRUST IN PERSONAL PROPERTY HOW CREATED—NO SET FORM OF WORDS ESSENTIAL.—A .trust in personal property need not be in writing, and no set form of words is necessary to create it. Any words which indicate with sufficient certainty an intention or purpose to create such a trust will be effective, without the use of the words "trust" or "trustee."

ID.—ACCEPTANCE—CONSENT OF BENEFICIARIES.—It was not necessary to the creation of the trust in the shares of stock by the owner that the beneficiaries should be informed of the trust, and should express an acceptance thereof to the trustee. The trust not having been rescinded, the consent of the plaintiffs to receive the stock held in trust by the owner from his executors in execution of the trust was sufficient to enable the beneficiaries to take advantage of it under section 2251 of the Civil Code.

ID.—SUPPORT OF FINDING—INDORSEMENT OF SHARES TO PLAINTIFFS.— A finding that the shares were indorsed to the plaintiffs by the former owner is sufficiently sustained by evidence that he indorsed them in blank, and that his intention in so indorsing them was to effect a transfer of them to the plaintiffs, as beneficiaries, and that his act had that effect.

ID.—SUPPORT OF FINDING AS TO TRUST.—Though the evidence does not show that the word "trust" was used, yet it was sufficient to support a finding as to the existence of the trust alleged, where it showed by his declarations and acts beyond doubt that he did in fact hold the shares of stock in trust for the plaintiffs, and so intended.

ID.—INEFFECTUAL GIFT—EVIDENCE CONSISTENT WITH TRUST FOUND.—
Though an ineffectual attempt to make a gift does not create a
trust, and equity will not perfect an imperfect gift by establishing
a trust, if none was contemplated, yet where the evidence is in
every way consistent with the view taken by the trial court that a
trust was contemplated, its findings establishing the trust must
stand.

ID.—DIRECTIONS ON ENVELOPE CONTAINING INDORSED SHARES—DELIVERY
UPON DEATH—CONSTRUCTION—PROVED INTENTION.—Where the in-
dorsed shares, witnessed by the bank cashier, were placed in an
envelope containing the words, "In case of my death to go to Neva
and Lena Cahlan," and were placed in a locked tin box deposited
in the bank vault, and after receipt of dividends thereon during
the life of the indorser they were delivered upon his death by his
executors to plaintiffs, the language so used on the envelope is not
to be construed as testamentary or as expressing a gift *causa
mortis,* but the directions thereon are to be given effect in accord-
ance with the purpose of the donor otherwise shown to have been
his intention in making the indorsement.

APPEAL from a judgment of the Superior Court of Las-
sen County. F. A. Kelley, Judge.

The facts are stated in the opinion of the court.

Pardee & Pardee, for Defendants-Appellants.

W. M. Boardman, and Grove C. Julian, for Interveners-
Appellants.

N. J. Barry, for Respondents.

CHIPMAN, P. J.—The plaintiffs in their complaint allege
the ownership and present possession each of ten shares of
the capital stock of the defendant bank, evidenced by two
certificates numbered, respectively, 113 and 114; that both
said certificates were issued to W. W. Scholl on January 8,
1902, and were thereafter duly assigned and delivered to
plaintiffs; that said Scholl died in December, 1907, and that
defendants, executors of the last will of said deceased, claim
some interest in said shares as belonging to the estate of
said deceased; that plaintiffs demanded of defendant bank
to pay to them the dividend accruing on said shares and the
same was refused. The prayer of the complaint is that de-
fendant bank be directed to transfer the said shares on its

books to plaintiffs and to pay plaintiffs the dividend due
thereon, and that the court decree that said Scholl at his
death had no right, title or interest in said stock or the divi-
dend thereon.

Defendant bank disclaims any interest in the controversy
and seeks only to be directed by the court as to its obligations
in the matter.

Defendants, the executors, deny, on information and belief,
the material allegations of the complaint, and pray the court
to ''ascertain the truth as to the matters of fact set forth
in the pleadings herein.''

Certain residuary legatees under the will of deceased and
heirs at law filed a complaint in intervention, claiming that
the property belonged to the deceased at his death.

The court made the following findings:

''III.   That on the eighth day of January, 1902, said Bank
of Lassen County by its officers duly authorized so to do,
issued in due form and delivered to said W. W. Scholl, two
certificates of its capital stock number 113 and 114, for ten
shares each.

''IV.   That on the fourteenth day of January, 1902, said
W. W. Scholl duly and legally assigned said certificates men-
tioned in finding III, hereof, and each of them, by indorse-
ment on the back thereof, to the plaintiffs.

''That said W. W. Scholl thereupon placed said two cer-
tificates in an envelope and sealed the same and placed the
following indorsement in writing on the outside of said
envelope: 'In case of my death to go to Neva and Lena Cah-
lan,' and he thereupon placed the same in a private box
kept by him in the vault of the Bank of Lassen County; that
thereafter and during the month of January, 1902, and at
other times thereafter said W. W. Scholl stated that said
certificates and the shares of capital stock of said bank
represented thereby, belonged to the plaintiffs in this action,
and that he held the same in trust for them, subject to his
right to have and receive the dividends accruing thereon
during his lifetime; that said certificates remained in said
private box up to the thirty-first day of December, 1907,
and on said day last named Fred Hines, one of the defend-
ant executors herein, delivered both of said certificates with
the envelope in which said certificates were inclosed, to the
plaintiffs herein.''

Judgment passed for plaintiffs from which defendants, the executors, and defendants, the interveners, appeal on bill of exceptions.

It appeared by the evidence that Scholl was for several years a partner in business with plaintiffs' father; that he was unmarried and lived with the Cahlans as one of the family and was greatly attached to them; that by reason of this attachment he gave to a brother of plaintiffs $1,000, and frequently expressed an intention to do something for plaintiffs, the two daughters of his friend. He was the owner of twenty shares of the Lassen County Bank, having a par and actual value of $100 each; he left these shares under lock and key in a tin box which was deposited in the bank vault; they were evidenced by two certificates, numbered 113 and 114, of ten shares each, were dated January 8, 1902, and bore an assignment in blank signed by Scholl and witnessed by H. W. Meylert, who was cashier of the bank; the certificates were inclosed in an envelope which was indorsed in the handwriting of Meylert as follows: "In case of my death to go to Lena and Neva Cahlan." Mrs. Cahlan, plaintiffs' mother, was a witness. She testified that she bought some shares of this bank at the same time Scholl purchased his; that he came to her shortly after and told her "that he had given the girls each ten shares of stock and had put it in his box at the bank. He wanted me to know that he had done this, was the reason that he came and told me. He wanted to give them something and he took this method of doing it. He said he had given them each ten shares of the bank stock, Lassen County Bank stock. This was in January, 1902. I had bought some stock myself that was issued at the same time. . . . The next conversation I had with him was down to the house and I told him with reference to that stock, if he wanted them to have it . . . we wanted him to be sure and leave it so we wouldn't have trouble about getting it, and he said that was all fixed; he said you can ask Mr. Meylert and he will tell you just the same." She was asked if Mr. Scholl said anything to her about retaining dividends to which she answered: "Yes, at the time I asked him if he was sure it was all fixed so there would be no trouble in getting it, he said there would be no trouble in getting it; . . . he said this, 'As long as I am kicking,' he says, 'I will hold this and re-

ceive the dividends.' '' She met Mr. Scholl at the bank a few days after the stock was issued and Mr. Meylert was present. She was asked on cross-examination to state the words or substance of the words used in the conversation that took place at that time to which she had testified in her examination in chief. She replied: ''Well, when I got my own stock, Wallace (Mr. Scholl) said, 'You can put it in my box here'; he went into the vault and brought his box out. He says, 'You can put it in here with the girls' stock'; he picked that up in his hands at the time; he says, 'This is the girls' stock, and you can put this in the box with it.' I asked Mr. Meylert if this is fixed all right and there would be no trouble in getting it, and Wallace laughed and said, 'She is afraid she will have trouble with the heirs,' and Mr. Meylert said, 'No, the heirs have nothing to do with this; this was the girls' at the time of Wallace's death; this don't go into the will,' he says. 'This is the girls' property.' I remember his saying it just like that. And Wallace admitted everything there, I don't remember just what he said, yes or no.'' The court: ''Do I understand you to say that he admitted as a fact that it was the girls' stock? A. Yes, I was talking to both men. Mr. Scholl said, 'Yes, this is the girls' stock, Mr. Meylert, this is all signed, there is nothing to do with this only transfer it on the books, this is the girls' property,' he said that at that conversation. He brought that box out, and picked that stock out of it, and he said 'You can put it in here with the girls' stock.' I put my stock in the box. Well, he might have put the girls' stock in an envelope, but at the time he held it in his hand, he had the two pieces of stock, and Mr. Meylert said, 'You see here that he has signed it,' and I saw that it was signed. . . . The stock referred to as the girls' stock was then put back into the box, and he carried the box back into the vault. My stock is right there yet so far as I know.'' Mr. Scholl stated to other persons that he had given ten shares of this stock to each of these plaintiffs. The evidence leaves no doubt of his intention to do this and that he did everything to accomplish it except to deliver the certificates to the donees. And the evidence was sufficient to warrant the inference that the indorsement on the envelope containing the certificates was made, with his knowledge and by his discretion; and, furthermore, that he retained possession for the donees

and for the purpose only of collecting the dividends while
he lived—in short, that he constituted himself their trustee
for the purposes stated.   Mr. Meylert died some time before
the trial, and hence his testimony could not be taken.   It
appeared that upon the death of Mr. Scholl his executors
opened his box under advice of counsel to ascertain the di-
rections of his will known to have been made.   They found
the envelope heretofore mentioned, and supposing it to be
their duty to carry out the directions written thereon, they
accordingly opened it and delivered the certificates to plain-
tiffs, which explains their possession.

All this evidence was admitted over the objection of de-
fendants on the general grounds of irrelevancy and incom-
petency, and particularly because not within the issues made
by the pleadings.   The point seems to be that as the com-
plaint alleges ownership and possession of the bank stock
and does not allege the trust to establish which the evidence
was admitted, it was not competent to prove ownership by
this means.   The facts present a somewhat peculiar case.
The primary object of the action is to establish ownership of
these certificates of stock which had been delivered to plain-
tiffs by the executors, but which stood on the books of the
bank in the name of plaintiffs' donor.   Ownership estab-
lished, the bank was willing to issue certificates to the donees.
Proof of ownership made necessary a disclosure of all the
facts out of which was to appear the ultimate fact of owner-
ship.   The facts thus disclosed showed that Mr. Scholl held
these certificates as trustee for plaintiffs.   His only interest
in the shares of stock was in the dividends paid during his
lifetime.   In the case of *Booth* v. *Bank of Oakland,* 122 Cal.
19, [54 Pac. 370], a case quite similar to this, the trustee-
ship in the bank was shown to establish ownership.   The
court said: ''The ownership of the plaintiff is all that is
material to be alleged.''   The ownership of real property
is a material, ultimate fact and may be pleaded as such
(*Gavin* v. *Swain,* 113 Cal. 324, [24 Pac. 677]) ; and the same
is true generally of ownership of personal property.   (21
Am. & Eng. Ency. of Pl. & Pr. 726.)   Here original owner-
ship was alleged in Scholl and transfer by him and posses-
sion in plaintiffs.   This was sufficient to admit the evidence
in support thereof although it showed a trust in Scholl.   We
think that this case falls clearly within the principles laid

down in *Hellman* v. *McWilliams,* 70 Cal. 449, [11 Pac. 659], and *Booth* v. *Oakland Bank of Savings,* 122 Cal. 19, [54 Pac. 370]. It was competent for Scholl to become the trustee of the trust created by himself. Even a *cestui que trust* may be made trustee of the fund of which he is the beneficiary. (*Nellis v. Packard,* 133 Cal. 617, [85 Am. St. Rep. 227, 66 Pac. 32].) In the well-considered case of *Otis* v. *Beckwith,* 49 Ill. 121, the subject of the trust, an insurance policy, never left the possession of the trustor and was found among his other papers at his death. The court said: "In such cases, equity will look to the substance of the act alone, and the intention with which it was done, and in the absence of fraud, carry out such intention and give it effect." One who owns property may so deal with it, while retaining the legal title, as to make himself a trustee for the benefit of another. (*Noble* v. *Learned,* 153 Cal. 245, [94 Pac. 1047], and cases cited.) Said the court in *Booth* v. *Oakland Bank,* 122 Cal. 19, [54 Pac. 370] : "It is well settled that a trust in personal property need not be in writing, and it is equally well settled that no set form of words are necessary to create a trust." Any words which indicate with sufficient certainty an intention or purpose to create a trust will be effective in so doing, without the use of the words trust or trustee. (*Estate of Smith,* 144 Pa. 428, [27 Am. St. Rep. 641, 22 Atl. 916].) Nor is it necessary that the beneficiary shall be informed of the trust, or shall express an acceptance. (*Booth* v. *Oakland Bank,* 122 Cal. 19, [54 Pac. 370].) "The mutual consent of a trustor and trustee creates a trust of which the beneficiary may take advantage at any time prior to its rescission." (Civ. Code, sec. 2251.) The trust here was not rescinded. The circumstance that Mr. Scholl retained the power to receive the dividends on the stock did not affect the validity of the trust. (Civ. Code, sec. 2251.)

It is objected that there is no evidence that Mr. Scholl indorsed the certificates on the back thereof "to the plaintiffs"; or that he stated in his lifetime that the certificates belonged to plaintiffs, "and that he held the same in trust for them," as found by the court. It does not appear that Scholl indorsed the certificates "to the plaintiffs," using that language. The indorsement was in blank. But the evidence clearly showed that his intention was to indorse them to plaintiffs and his act had that effect. Nor did it appear

that he ever said in words that ''he held the same in trust for them,'' but his declarations and acts showed beyond doubt that he did in fact so hold them and so intended. Otherwise, the evidence shows that the findings are literally correct and are fully supported. If not literally supported in the particulars pointed out above, they were in those respects substantially supported. The evidence justified the court in finding that the indorsement in effect was to plaintiffs and that he held the certificates in trust for them.

It is true, as claimed by appellants, that an ineffectual attempt to make a gift does not create a trust, and equity will not perfect an imperfect gift by establishing a trust where none was contemplated (*Noble* v. *Learned*, 153 Cal. 245, [94 Pac. 1047]) ; but here the evidence is in every way consistent with the view taken by the trial court that a trust was contemplated, and its findings must stand. (*Noble* v. *Learned*, 153 Cal. 245, [94 Pac. 1047].)

It is urged that the directions on the envelope containing the certificates ''are testamentary in character, and as such are invalid and void in law, affecting any interest in the property.'' (Citing *Hart* v. *Ketcham*, 121 Cal. 429, [53 Pac. 931].) As an attempt to effectuate a gift *causa mortis* and nothing else this may be so. But these directions are to be given effect in accordance with the purpose of the donor otherwise shown to have been his intention in making the indorsement.

We think that the judgment is correct, and it is therefore affirmed.

Burnett, J., and Hart, J., concurred.