[Civ. No. 2250.  Second Appellate District.—February 25, 1918.]

BELLE SOUZA, as Administratrix, etc., Appellant, v. FIRST NATIONAL BANK OF HANFORD (a Corporation), et al., Respondents.

Trust—Personal Property—Parol Evidence.—A trust as to personal property may be established by parol.

Id.—Money in Bank—Parol Trust—Insufficiency of Evidence.—A trust as to money on deposit in a bank is not created for the benefit of the minor children of the depositor by parol evidence of declarations of the trustor made to his brother to take the money, pay his bills, and hold the balance for the children, in the absence of any evidence of any declarations as to how long the money should be held or as to how it should be applied.

APPEAL from a judgment of the Superior Court of Kings County. M. L. Short, Judge.

The facts are stated in the opinion of the court.

Frank B. Graves, for Appellant.

H. Scott Jacobs, for Respondents.

JAMES, J.—This action was brought by Belle Souza as administratrix of the estate of her deceased husband, Jose A. Souza, to recover for the estate represented by her, money which was on deposit with the defendant bank at the time of Souza's death. At that time the money was in a savings account, and from the bank records appeared to have been payable either to Jose A. Souza, the deceased, or to John A. Souza, his brother. Defendant John A. Souza asserted in defense, and in this defense he was joined by the bank, that the money represented by the deposit had been transferred to him by his brother for the benefit of three minor children of the deceased and this plaintiff. In brief, it was asserted that a trust had been created as to the fund on deposit in the bank, with John A. Souza as trustee, for the benefit of the three minor children who were all living at the time of the death of Jose. The plaintiff asserted in her complaint that the money was a part of the community estate of herself and husband, but the evidence did not sustain that claim and the point involved as to that issue is not here for consideration. The real question is as to whether a valid trust was created under which John A. Souza was entitled to take and hold the money, whch had been the separate property of deceased, for the benefit of the minor children referred to. The evidence showed that for a number of years prior to his marriage with the plaintiff, deceased had lived with the latter, and one of the three children numbered among the minors mentioned herein was born during the time that the two persons occupied the relation of husband and wife without the sanction of a marriage ceremony. The last two children were born after the parties had entered into a legal marriage, and at the time of the death of Jose the minors were aged, respectively, four years, two and one-half years and one year. A part of the money constituting the deposit had been paid to deceased by plaintiff for work which the deceased did for her on her own property. This money, however, was paid prior to the time the marriage ceremony was performed. In about the year 1910 Jose made the deposit of about one thousand two hundred dollars with the defendant bank on savings account, and at the time of his death accumulated interest had augmented the original sum until the total was about one thousand four hundred dollars. In January, 1915, Jose became very ill and was confined in a hospital at Hanford, California. John

Souza testified that while in the hospital his brother sent for him and made a request regarding the handling of the money represented in the account which he had with the defendant bank. We will state all of the testimony referring to the matter of the creation of the alleged trust. John Souza testified that when he went to the hospital at Hanford he saw his brother and had a talk with him. When asked to state what was said by his brother Joe at that time, he replied: ''Why Joe was telling me that he had some money in the First National Bank; he said all the money he had he was going to give it to me to pay his bills and give it to his children; he told Bob he had some money in the Bank of Lemoore; he said he was going to fix it the same; he said he was going to turn it to me for me to pay his bills and keep the balance for the children; that's about all I remember about it.'' The person referred to as ''Bob'' was R. V. Hall, an assistant cashier of defendant bank. Mr. Hall testified that at the suggestion of John Souza he went to the hospital to see the sick man Joe; that Joe Souza was a Portuguese and understood little English, and that John Souza, apparently interpreting the language of Joe to witness, said that Joe was going to Oakland to consult a doctor there; that he had certain money in the First National Bank; that he wanted it fixed, if he never got back, that John was to have the money, and that the witness had replied that he would fix the deposit entries on the books of the bank so that the request could be carried out. He added that he did in fact make the change so that the money might be drawn upon the check of either Jose or John. The court made this inquiry of the witness Hall: ''Q. Did he [Jose] say for what purpose he wanted it to go to John A. Souza? A. I can only answer that—John A. Souza told me that his brother wanted him to have the use of this money in case of his death for the support of two children or his direct heirs; his children; that the wife of Joe Souza had some other children, and he was afraid that the wife would spend this money on the other children and he wanted his own children to have the use and benefit of this money; I then turned and asked Joe if that was correct; he said 'yes.' '' The witness John A. Souza, being further examined as to what was said to him by Joe at the Hanford Hospital, replied: ''I asked Joe what he give his money for; he said, 'I give you my money for you to pay the doctor bills and hospital bills and keep the balance

for the keep of my children; when they need it'; that's all I remember." Antone Souza, another brother of deceased, testified that in the hospital in Oakland he hear Joe Souza tell John, the brother, "to hold the money; to take the money; part of the money, and pay the bills and hold the balance for his children." It may be noted that Hall testified that Joe referred to two children only. Not only did the testimony of the plaintiff show that there were three minor children, as we have before stated, but the answer of both defendants specifically set forth the names and ages of three minor children of deceased. The court found that a trust had been created as to the fund here in controversy, and that the money was no part of the estate of Jose Souza, deceased. The judgment determined that John A. Souza was entitled to the possession of the money, conditioned upon his executing a bond to the state of California in the sum of two thousand eight hundred dollars to insure the faithful execution of the trust. That part of the judgment determining the trust and the character and purpose of it, is as follows: "That defendant, John A. Souza, do have and recover judgment against plaintiff and against defendant, First National Bank of Hanford, adjudging and decreeing that said defendant, John A. Souza, is the owner and entitled to the possession of all the money mentioned in the complaint and findings in said action, amounting to $1,398.38, in trust for the use and benefit of the minor children of Jose A. Souza, deceased, to wit: Edward Souza, Mary A. Souza and Josephine E. L. Souza; . . . "

Appellant very earnestly contends that the evidence was insufficient to show the creation of a valid trust as to this money.

That a trust as to personal property may be established by parol, is well settled. (*Roach* v. *Caraffa*, 85 Cal. 436, [25 Pac. 22] ; *Silvey* v. *Hodgdon*, 52 Cal. 363; *Cahlan* v. *Bank of Lassen County*, 11 Cal. App. 533, [105 Pac. 765] ; *Hellman* v. *McWilliams*, 70 Cal. 449, [11 Pac. 659] ; *Booth* v. *Oakland Bank of Savings*, 122 Cal. 19, [54 Pac. 370].) The case last cited and the case of *Hellman* v. *McWilliams*, *supra*, are also authority to the point that where the trustor retains the right to check against a deposit which is made the subject of a trust agreement, the transfer may, nevertheless, be effectual as to the trustee. The real difficulty we encounter in this case is

to find that the particular purpose, the proportion of interest which the minors were to have in the trust fund, and the duration of the trust, were made sufficiently definite by the expressions of the trustor. The evidence as to the declarations made by Jose Souza shows that nothing was said by the latter as to how long the brother John was to retain the fund, nor as to how it should be applied on behalf of the minors. We have already noted that, according to the testimony of Hall, only two children were mentioned by Jose as being those whom he wished to have the benefit of the money; but we may well assume that the court was correct in concluding that the intention was that the money should be held for the benefit of the three minor children who were shown to be in existence at the death of Jose, and at the time of the creation of the alleged trust. It may be that the intention of Jose was that the fund should be used for the benefit of the children during their minority, and any residue that remained should be divided equally between them upon the youngest becoming of age; it may be that his intention was that the minors should have the right to the money immediately upon his death, through the medium of his brother John in some sort of guardian capacity. The very fact that these speculations suggest themselves as defining the possible intent that Jose Souza had in mind at the time he gave his directions to John, at once illustrates the uncertainty which would attend the administration of the alleged trust. In *Wittfield* v. *Forster,* 124 Cal. 418, [57 Pac. 219], our supreme court was considering the question of the validity of an alleged trust which was attempted to be created, where the trustor executed a document in writing, stating that he conveyed to one Forster, "as trustee in trust for San Diego Lodge No. 35, Free and Accepted Masons, of the State of California, all the property I now own, both real and personal, . . . " In determining that the trust so attempted to be created was void for uncertainty, the court first quoted from Pomeroy's Equity Jurisprudence, as follows: "The declaration of trust, whether written or oral, must be reasonably certain in its material terms; and this requisite of certainty includes the subject-matter of property embraced within the trust, the beneficiaries or persons in whose behalf it is created, the nature and quantity of interest which they are to have, and the manner in which the trust is to be performed. If the language is so vague, gen-

eral, or equivocal that any of these necessary elements of the trust is left in real uncertainty, then the trust must fail.'' And applying the rule of essentials, as stated by the textwriter, to the trust there being considered, the court said: ''The duration of the estate attempted to be granted to the trustee, the nature and quantity of interest which the beneficiaries are to have, and the manner in which the trust is to be performed, are all left undeclared and without any reasonable certainty; . . . And this uncertainty also makes the attempted trust as to the personal property void.'' We also cite, as in part applicable, the decision in the case of *Barker* v. *Hurley*, 132 Cal. 21, [63 Pac. 1071, 64 Pac. 480].

In our opinion, the evidence was insufficient to show the creation of a valid trust as to the money in controversy.

The judgment is, therefore, reversed.

Conrey, P. J., and Works, J., *pro tem.*, concurred.