[Civ. No. 7577. First Appellate District, Division Two.—June 4, 1931.]

FRANK LYNCH, Respondent, v. WELLS FARGO BANK & UNION TRUST CO. (a Corporation), Appellant.

Heller, Ehrman, White & McAuliffe for Appellant.

Pillsbury, Madison & Sutro, Wright & McKee and C. M. Monroe for Respondent.

STURTEVANT, J.—Plaintiff commenced an action against the defendant to recover a certain fund in the sum of $25,000. From a judgment in favor of the plaintiff the defendant has appealed.

Stephens & Company was a corporation transacting a stock-broker's business in San Francisco. During that time it was banking with the defendant. Under the rules of the defendant, Stephens & Company was required to keep a balance of $39,000 at all times. As from the beginning Stephens & Company maintained its general commercial account with the defendant bank. For some time prior to February 20, 1925, Stephens & Company had made such arrangements with the plaintiff that the plaintiff had deposited in one of the banks at Los Angeles $25,000 and received therefor a certificate of deposit payable to Stephens & Company, bearing interest at four per cent and maturing in six months. On maturity of one of these certificates it was renewed and another one issued. When one was issued it was given by Stephens & Company to plaintiff and that company paid plaintiff six per cent interest. Upon the maturity of the third certificate of deposit Stephens & Company expressed its desire to change the form of the deposit and also to move the money to San Francisco, claiming that it would put the company in better standing in San Francisco with the defendant bank. At that time Stephens & Company was in good financial condition. The change to San Francisco commenced in the early part of February, 1925. The certificate of deposit, then unmature, was cashed

on February 5, 1925, and the proceeds were deposited with the defendant bank subject to instructions. When the defendant bank had received the cash Stephens & Company was notified and came forward with a letter dated February 20, 1925, and a carbon copy of that letter. The original letter was delivered to the defendant and is as follows:

"February 20, 1925.

"Wells Fargo Bank & Union Trust Company,
    "San Francisco, Calif.
                    "Attention: Mr. Jackson.
"Gentlemen:

"Confirming our recent conversation you are advised that as treasurer of this company, I am holding in trust certain funds in the sum of $25,000.00, which we are today depositing with your bank in a special account to be known as 'Stephens & Company Special Account.'

"You are further advised that this special account is not subject to be drawn against in our usual course of business, but is subject to withdrawal only on the signature of Frank Lynch and F. H. Spiess of this company.

"We hand you herewith signature card bearing the signatures of Frank Lynch and F. H. Spiess.

                            "Very truly yours,
                            "STEPHENS & COMPANY,
                        "By F. H. SPIESS, Treasurer.
"FHS:N.

"Above deposit acknowledged this date.
            "WELLS FARGO BANK & UNION TRUST COMPANY
                            "By P. L. JACKSON."

The carbon copy had the same acknowledgment written thereon by Mr. Jackson. That gentleman was not advised that the carbon copy would be delivered to the plaintiff. On the same date Stephens & Company wrote as follows:

"February 20th, 1925.

"Mr. Frank Lynch,
    "1925 K Street,
        "San Diego.
"Dear Sir:

"We acknowledge receipt from you of the sum of twenty-five thousand ($25,000) dollars to be held in trust by this company for your account, and you are advised that we

have this day deposited these funds in the Wells Fargo Bank & Union Trust Company, of San Francisco, in an account called 'Stephens & Company Special Account', which account is not subject to be drawn against in our usual course of business, but is solely for your protection. The fund is subject to withdrawal only on the signature of yourself, together with the signature of F. H. Spiess of this company. We further understand and agree that these funds will be held intact in this special account as a trust for you, and in consideration of your deposit of said funds with us, we agree to pay you interest thereon at the rate of 6 per cent per annum, payable quarterly, from February 8th, 1925, until repaid to you.

"It is understood and agreed that you may require from us the repayment of said sum above mentioned at any time, and in order that you may obtain repayment thereof out of said 'Stephens & Company Special Account', we hand you herewith a check to your order upon said special account signed by our Mr. F. H. Spiess, and which when signed by you may be used by you for the purpose of obtaining repayment of said sum. We further unconditionally guarantee that safety of said deposit against all contingencies, and agree that if said bank should at any time, fail, refuse, or neglect to honor the above mentioned check upon presentation, or if said bank should become insolvent or be unable to meet its obligations, we will, upon demand, repay to you said sum of money with interest.

"We also hand you herewith carbon copy of our letter to the Wells Fargo Bank & Union Trust Company depositing the above sum with them in this special account, and which is duly acknowledged by the Wells Fargo Bank & Union Trust Company.

"Very truly yours,

"STEPHENS & COMPANY,

"By SPIESS, Treasurer."

On the same date Stephens & Company drew a check which was signed by F. H. Spiess but which had a blank space for the date and a blank space for signature by the plaintiff. The blanks are indicated by the parentheses. The check was as follows:

"STEPHENS & COMPANY
"No. 3748
"San Francisco, (December 24, 1926)
"Pay to the order of Frank Lynch $25,000.00
"Exactly Twenty Five Thousand Dollars No Cents
"STEPHENS & COMPANY,
"Special Account
"By F. H. SPIESS (FRANK LYNCH)
"To Wells Fargo Bank and Union Trust Co.
"11–16                          San Francisco, Cal."

The said undated check was delivered to the plaintiff, together with Stephens & Company's letter of February 20, 1925. On August 16, 1926, Stephens & Company wrote the defendant as follows:

"August 16, 1926.
"Wells Fargo Bank & Union Trust Company
"San Francisco, California.
"Gentlemen:

"As Treasurer of Stephens & Company I have previously issued instructions with reference to certain funds held in 'Stephens & Company Special Account' and this letter will be your authorization to cancel my previous instructions regarding withdrawal of these funds and in lieu thereof, kindly honor checks drawn against this account, property signed by F. H. Spiess or G. C. Hallawell, both signatures you have on file in our regular Commercial Account.

"Very truly yours,
"STEPHENS & COMPANY
"By SPIESS, Treasurer (Seal)
"F. H. SPIESS
"AMH."

On the same day Stephens & Company drew its check on the special account in the sum of $15,000 and delivered the same to the defendant bank to cover an overdraft which had been incurred that day. Similarly on November 3, 1926, it drew another draft for a similar purpose in the sum of $9,500. On August 16, 1926, a $6,000 deposit was made in the general account. That sum was a new loan made by the defendant to Stephens & Company. The funds that were transferred from the special account to the general account of Stephens & Company were used in the general course of business of Stephens & Company. On December 24, 1926,

the plaintiff inserted the date in the check theretofore received from Stephens & Company and which had already been signed by F. H. Spiess and at the same time the plaintiff signed his name and presented the check to the defendant bank on December 26, 1926. The defendant refused to pay the check and this action was commenced.

██ In its opening brief the defendant asserted that there was no trust and that Stephens & Company did not become a trustee for the plaintiff. In his brief the plaintiff vigorously disputed the soundness of those two contentions and called attention to the language used in the letters hereinabove set forth. In its reply brief, the defendant took up the subject much more exhaustively and made the broad contention that the relation between the plaintiff and Stephens & Company was that of debtor and creditor and that defendant acted merely as a depositary. In this connection the defendant emphasized the fact that Stephens & Company undertook to pay interest to the plaintiff at the rate of six per cent. That fact is pertinent, but not conclusive, in support of the defendant's contention. However, other passages in the correspondence are against the contention of the defendant. The plaintiff's money came to San Francisco and was deposited with the defendant for the sole purpose of sustaining the credit of Stephens & Company. If the broad relation of debtor and creditor existed, Stephens & Company would have had the right to the unrestricted use of the fund and would have had the right to deposit it and withdraw it as seemed best to that company. However, by the clear terms of the contract the deposit was to stand in the name of Stephens & Company, but every other right was withheld without first obtaining the signature of the plaintiff. As the court said in *Keeney* v. *Bank of Italy*, 33 Cal. App. 515, 522 [165 Pac. 735], in discussing the same contention. " . . . so long as Platt, the agent of the plaintiff, retained the proceeds of the sale it was the money of his principals and not his own". ██ Without repeating the passages the correspondence, of which the defendant held the original or copies, clearly and definitely advised the defendant that Stephens & Company held the moneys in trust. (*Cahlan* v. *Bank of Lassen*, 11 Cal. App. 533, 539, 540 [105 Pac. 765]; *Noble* v. *Learned*, 153 Cal. 245, 250 [90 Pac. 1047]; *Keeney* v. *Bank of Italy*, 33 Cal. App. 515, 517

[165 Pac. 735]; *Devoe* v. *Lutz,* 133 App. Div. 356 [117 N. Y. Supp. 339, 341].) Such recitals informed the defendant that the moneys were a trust fund. If defendant wanted more information it should have asked for it. The fact that plaintiff's rights were not defined in the documents delivered to the defendant is not controlling (*Manhattan Bank* v. *Walker,* 130 U. S. 267, 269 [32 L. Ed. 959, 9 Sup. Ct. Rep. 519]). In many of the cases reported the same fact existed. The word "trust" is a very broad expression. Assuming, without deciding, that the trust in the instant case is not one of "Those technical and continuing trusts which are not at all cognizable at law, but fall within the proper, peculiar, and exclusive jurisdiction of a court of equity," such fact does not relieve the defendant from liability in paying out the above-mentioned moneys in the manner in which they were paid out. As stated above, it is clear that the fact that Stephens & Company undertook to pay interest to the plaintiff is a circumstance to be considered. However, the fact that the plaintiff reserved the right to collect interest or that he made a more extended reservation does not necessarily prevent him from claiming a trust. (*Booth* v. *Oakland Bank of Savings,* 122 Cal. 19 [54 Pac. 370]; *Cahlan* v. *Bank of Lassen County,* 11 Cal. App. 533 [105 Pac. 765].)

As stated above, the defendant earnestly contends that there was no trust. We think there was, and assuming that there was, we do not understand that the defendant contends that the rule stated in *Southern T. & C. Bank* v. *San Diego Sav. Bank,* 60 Cal. App. 215 [212 Pac. 385], is not a correct statement of the law. In that case, at page 219, the court quotes L. R. A. 1915C, 519, with approval " 'There are three ways in which a bank may incur liability and be compelled to make good deposits that have been misappropriated by the fiduciary: (1) By a violation on its part of the contract, express or implied, between it and the owner of the fund. The reason for the bank's liability is based upon the general principle that the bank cannot discharge its obligation to a depositor except by payment in strict conformity to the contract of deposit. (2) By appropriating the fund, either with or without the fiduciary's consent, to the payment of the latter's debt to the bank. The reason for the bank's liability is based upon the general theory that the owner of a fund may follow it into the hands

of and recover it from any person who has not innocently given value therefor. The action for money had and received is an appropriate form of action in this class of cases. (3) By assisting the fiduciary to accomplish the misappropriation, the bank having knowledge, actual or constructive, that the fraud is being or about to be perpetrated by the fiduciary. The reason for the bank's. liability is that it knowingly makes itself a party to a fraud, and must make good the loss that results from the misappropriation.' " The numerous authorities cited in the note, L. R. A. 1915C, at page 519, clearly support the text. To the same effect are *Smith* v. *Farmers' & Merchants' Bank,* 2 Cal. App. 377 [84 Pac. 348] ; *Biurrun* v. *Elizalde,* 61 Cal. App. 675 [215 Pac. 690] ; *Manhattan Bank* v. *Walker, supra.* ▉ That, under the facts, the plaintiff's case falls within the second and third divisions of the rule as quoted from *Southern T. & C. Bank* v. *San Diego Sav. Bank, supra,* we think is clear. But, for reasons not argued in the briefs, we think the case does not fall within the first division of the rule quoted. There was no joint deposit by Lynch and Spiess. The contract of deposit was made by Stephens & Company and it designated Lynch and Spiess as the persons authorized to sign checks on the deposit. Having by its letter to defendant conferred that authority on Lynch and Spiess, Stephens & Company could by another letter take the authority away and confer it on Hallawell and Spiess. (7 C. J. 676, notes 15 and 16.) That action was taken by writing the letter dated August 16, 1926. In the absence of any other facts, the defendant would have been justified in acting on said letter and in paying checks drawn by Hallawell and Spiess. If no other facts were involved, there would have been no violation by the defendant of the contract of deposit. (*Keeney* v. *Bank of Italy, supra.*) In other words, the case would not fall within the first division of the rule quoted. However, there were present most important additional facts. The day the account was opened by the terms of the letter dated February 20, 1925, it was pointedly stated that the moneys being deposited were a trust fund. Thereafter the bank was under obligation to act accordingly. (*Bundy* v. *Monticello,* 84 Ind. 119, 131; *Keeney* v. *Bank of Italy, supra;* *United States etc. Co.* v. *First Nat. Bank,* 18 Cal. App. 437, 440 [123 Pac. 352].) Later when Stephens & Company had

incurred overdrafts and thereafter brought forward checks on the special account and deposited them in its general account in payment of its overdraft, the defendant bank cashed and received the proceeds at its risk. (*Havana Cr. Co.* v. *Central Trust Co.*, 204 Fed. 546 [L. R. A. 1915B, 715]; *Keeney* v. *Bank of Italy*, 33 Cal. App. 515, 518.) In the case of *Central Nat. Bank* v. *Insurance Co.*, 104 U. S. 54 [26 L. Ed. 693], the general subject is considered at large. A great many authorities are reviewed. The second syllabus states the conclusions of the court as follows: "The bank contracts that it will pay the money on his checks, and, when they are drawn in proper form, it is bound to presume, in case the account is kept with him as a trustee, or as acting in some other fiduciary character, that he is in the course of lawfully performing his duty, and to honor them accordingly; but when against such an account it seeks to assert its lien for an obligation which it knows was incurred for his private benefit, it must be held as having notice that the fund is not his individual property, if it is shown to consist, in whole or in part, of money which he held in a trust relation." In *Manhattan Bank* v. *Walker*, 130 U. S. 267, at page 279 [32 L. Ed. 959, 9 Sup. Ct. Rep. 523], the court said "By the face of the receipt, the defendant recognized the plaintiff as the true owner of the bonds, her name being mentioned in it; and it was capable of no other construction than that the plaintiff owned the securities mentioned. Knowing, from what passed between Maas and Judah, that the bonds were to be used to raise money for the benefit of Walker Sons & Co., and knowing that such use was an improper disposition of the bonds, unless the transaction were affirmatively and directly sanctioned by the plaintiff, the defendant became a party to the misappropriation of the bonds. It is immaterial, in this view, whether or not the defendant received any portion of the money loaned by the Bank of Commerce on the security of the bonds."

The defendant claims that plaintiff's action was not in proper form. The point is without merit. In the first place there was no demurrer interposed and the case was tried in the lower court without presenting the point. In the second place the plaintiff pleaded a common count as for moneys had and received and in the second count he pleaded the facts. Under the latter count he clearly had the right to

recover. Under a count as for moneys had and received he also had the right to recover. (41 C. J. 48; 17 Cal. Jur. 604; *Smith* v. *Farmers' & Merchants' Bank,* 2 Cal. App. 377, 381 [84 Pac. 348]; *Southern T. & C. Bank* v. *San Diego Sav. Bank,* 60 Cal. App. 215 [212 Pac. 385]; *York* v. *Farmers' Bank,* 105 Mo. App. 127 [79 S. W. 968, 971].)

■ Finally the defendant contends that plaintiff is estopped to assert against the defendant any claim in respect to the money deposited February 20, 1925, in the account designated "Stephens & Company. Special Account." The point is presented by a statement of facts. Some of the facts so recited are not contained in the record. What constitutes an estoppel is stated in 10 California Jurisprudence, at page 627, as follows: "In general, four things are essential to the application of the doctrine of equitable estoppel; first, the party to be estopped must be apprised of the facts; second, he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; third, the other party must be ignorant of the true state of facts; and fourth, he must rely upon the conduct to his injury." Of those four elements so designated in the text, in the instant case there was no evidence to establish elements 1, 3 and 4. (*Brown* v. *Daugherty,* 120 Fed. 526, 534, 535.) Therefore the point may not be sustained.

We find no error in the record. The judgment is affirmed.

Nourse, P. J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 3, 1931, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 3, 1931.